

**CORPORATE CREATIONS®**
Registered Agent • Director • Incorporation

**Corporate Creations Network Inc.**
11380 Prosperity Farms Road #221E, Palm Beach Gardens, FL 33410

Harbor Freight Tools USA, Inc.                                    04/12/2019
Tammy Stafford Associate General Counsel
Harbor Freight Tools USA Inc
26541 Agoura Road
Calabasas  CA  91302

# SERVICE OF PROCESS NOTICE

The following is a courtesy summary of the enclosed document(s). **ALL information should be verified by you.**

| | | Item: 2019-289 |

Note: Any questions regarding the substance of the matter described below, including the status or how to respond, should be directed to the contact set forth in line 12 below or to the court or government agency where the matter is being heard. IMPORTANT: All changes or updates to the SOP contact individuals or their contact information must be submitted in writing to SOPcontact@corpcreations.com. Any changes will become effective upon written confirmation of Corporate Creations.

| 1. | Client Entity: | Harbor Freight Tools USA, Inc. |
|---|---|---|
| 2. | Title of Action: | Cassandra Boyle, Individually and on behalf of all others similarly situated vs. Harbor Freight Tools USA, Inc. |
| 3. | Document(s) Served: | Summons<br>Class Action Complaint<br>Rule 222(b) Affidavit |
| 4. | Court/Agency: | St. Clair County Twentieth Judicial Circuit Court |
| 5. | State Served: | Illinois |
| 6. | Case Number: | 19-L-188 |
| 7. | Case Type: | Damages |
| 8. | Method of Service: | Hand Delivered |
| 9. | Date Received: | Thursday 4/11/2019 |
| 10. | Date To Client: | Friday 4/12/2019 |
| 11. | # Days When Answer Due: 30<br>Answer Due Date: 05/11/2019 | CAUTION: Client is solely responsible for verifying the accuracy of the estimated Answer Due Date. To avoid missing a crucial deadline, we recommend immediately confirming in writing with opposing counsel that the date of the service in their records matches the Date Received. |
| 12. | SOP Sender:<br>(Name, City, State, and Phone Number) | Brandon M. Wise<br>St. Louis, MO<br>(314) 833-4825 |
| 13. | Shipped To Client By: | Email Only with PDF Link |
| 14. | Tracking Number: | |
| 15. | Handled By: | 141 |
| 16. | Notes: | None. |

NOTE: This notice and the information above is provided for general informational purposes only and should not be considered a legal opinion. The client and their legal counsel are solely responsible for reviewing the service of process and verifying the accuracy of all information. At Corporate Creations, we take pride in developing systems that effectively manage risk so our clients feel comfortable with the reliability of our service. We always deliver service of process so our clients avoid the risk of a default judgment. As registered agent, our role is to receive and forward service of process. To decrease risk for our clients, it is not our role to determine the merits of whether service of process is valid and effective. It is the role of legal counsel to assess whether service of process is invalid or defective. Registered agent services are provided by Corporate Creations Network Inc.

11380 Prosperity Farms Road #221E, Palm Beach Gardens, FL 33410    Tel: (561) 694-8107    Fax: (561) 694-1639
www.CorporateCreations.com



EXHIBIT

1

## CIRCUIT COURT FOR THE 20TH JUDICIAL CIRCUIT

State of Illinois )
)  S.S.
County of St. Clair )

Case Number _____ 2019L188 _____

Amount Claimed  In excess of $50,000.00

CASSANDRA BOYLE

HARBOR FREIGHT TOOLS
USA, INC.

VS

Plaintiff(s)

Defendant(s)

Classification Prefix _____ Code _____  Nature of Action _____ Code ____

Pltf. Atty. Brandon M. Wise _____ Code 631958
Address 818 Lafayette Avenue, Floor 2
City St. Louis, MO 63104 _____ Phone 31483348
Add. Pltf. Atty. _____ Code ____

**TO THE SHERIFF: SERVE THIS DEFENDANT AT**
NAME  Corporate Creations Network

ADDRESS 350 S Northwest Highway #300

**SUMMONS COPY**

To the above named defendant(s). . . . . . :

CITY & STATE  Park Ridge, IL 60068

☐ A. You are hereby summoned and required to appear before this court at
(court location) _____ at _____ M. On _____ 20 ___
to answer the complaint in this case, a copy of which is hereto attached. If you fail to do so, a judgment by default may
be taken against you for the relief asked in the complaint.

☑ B. You are summoned and required to file an answer to the complaint in this case, a copy of which is hereto
attached, or otherwise file your appearance, in the office of the clerk of this court within 30 days after service of this
summons, exclusive of the day of service. If you fail to do so, judgment of decree by default may be taken against you
for the relief prayed in the complaint.

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service
provider. Visit https://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp.

**TO THE OFFICER:**
This summons must be returned by the officer or other person to whom it was given for service, with
indorsement thereon of service and fees if any, immediately after service. In the event that paragraph A of this
summons is applicable this summons may not be served less than three days before the day of appearance. If service
cannot be made, this summons shall be returned so indorsed.

This summons may not be served later than 30 days after its date.

WITNESS, _____ 20 ___

Clerk of Court

BY DEPUTY: _____

DATE OF SERVICE: 4/11 20 19

(To be inserted by officer on copy left with defendant
or other person)

KAHALAH A CLAY, Circuit Clerk
4/2/2019
MARGARET SMITH

I certify that I served this summons on defendants as follows:

(a) – (Individual defendants – personal):
By leaving a copy of the summons and a copy of the complaint with each individual defendant personally as follows:

Name of defendant                                              Date of service

_____              _____

_____              _____

_____              _____

(b) - (Individual defendants - abode):
By leaving a copy of the summons and a copy of the complaint at the usual place of abode of each individual defendant with a person of his family, of the age of 13 years or upwards, informing that person of the contents of the summons, and also by sending a copy of the summons and of the complaint in a sealed envelope with postage fully prepaid, addressed to each individual defendant at his usual place of abode, as follows:

| Name of defendant | Person with whom left | Date of service | Date of mailing |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

(c) - Corporation defendants):
By leaving a copy of the summons and a copy of the complaint with the registered agent office, or agent of each defendant corporation as follows:

| Defendant corporation | Registered agent, officer or agent | Date of service |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

(d) - (Other service):

```
┌─────────────────────────────┐
│     SHERIFF'S FEES          │
│                             │
│ Service and return _____$  │
│ Miles _____ ........$___ │
│ Total .............$____    │
│                             │
│ _____   │
│ Sheriff of _____ County│
└─────────────────────────────┘
```

_____, Sheriff of _____County

_____, Deputy

Electronically Filed
Kahalah A. Clay
Circuit Clerk
MARGARET SMITH
19L0188
St. Clair County
3/5/2019 11:46 AM
4154973

# IN THE TWENTIETH JUDICIAL CIRCUIT
## ST. CLAIR COUNTY
## STATE OF ILLINOIS

| | |
|---|---|
| CASSANDRA BOYLE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) ) ) |
| *Plaintiff,* | ) ) ) |
| v. | ) Case No.: **19-L-188** ) |
| HARBOR FREIGHT TOOLS USA, INC., | ) Judge: ) |
| | ) **JURY TRIAL DEMANDED** |
| **Serve:** **Corporate Creations Network** **350 S Northwest Highway #300** **Park Ridge, IL 60068** | ) ) ) ) ) |
| *Defendant.* | ) |

## CLASS ACTION COMPLAINT

Plaintiff Cassandra Boyle (hereinafter "Plaintiff" or "Boyle"), brings this Class Action Complaint individually and on behalf of all others similarly situated against Defendant Harbor Freight Tools USA, Inc. (hereinafter "Harbor Freight" or "Defendant"), to stop Defendant's unlawful collection, use, storage, and disclosure of Plaintiff's and the proposed Class's sensitive, private, and personal biometric data. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by her attorneys. Further, Plaintiff alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Cassandra Boyle is an individual citizen of the State of Illinois. While working for Harbor Freight, from on or about 2016, Plaintiff was a resident of Illinois.

2.      Defendant Harbor Freight Tools USA, Inc. is a Delaware corporation and has at least one place of business in Illinois.

3.    Defendant may be served through its registered agent, Corporate Creations Network, 350 S Northwest Highway #300, Park Ridge, Illinois 60068.

4.    Jurisdiction is proper in this Court as Defendant operates its business in Illinois and the unlawful acts complained of herein occurred in Illinois.

5.    Venue is proper in this court pursuant to 735 ILCS 5/2-101 as, upon information and belief, Defendant does business in this county, making Defendant a resident of this county for venue purposes.

### INTRODUCTION

6.    Plaintiff worked for Defendant in Illinois.

7.    Each time Plaintiff began and ended her workday, she was required to "clock-in" and "clock-out" using a timeclock that operated, at least in part, by scanning Plaintiff's fingerprint.

8.    As an employee, Plaintiff was required to scan her fingerprint multiple times so Defendant could create, collect, capture, construct, store, use, and/or obtain a biometric template for Plaintiff.

9.    Defendant subsequently stored Plaintiff's biometric data in a biometric database.

10.    Defendant then used Plaintiff's biometrics as an identification method to track her time, potentially with the help of a third-party vendor.

11.    While most establishments and employers use conventional methods for tracking time worked (such as ID badge swipes or punch clocks), Defendant, upon information and belief, mandated and required that employees have their fingerprints scanned by a biometric timekeeping device.

12.    Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – fingerprint biometrics are unique, permanent biometric identifiers associated with each employee.

13.     This exposes Defendant's employees, including Plaintiff, to serious and irreversible privacy risks.

14.     For example, if a biometric database is hacked, breached, or otherwise exposed – such as in the recent Equifax data breach – employees have **no** means by which to prevent identity theft, unauthorized tracking, and other improper or unlawful use of this information.

15.     The Illinois Biometric Information Privacy Act (hereinafter "BIPA" or the "Act") expressly obligates Defendant to obtain an executed, written release from an individual, as a condition of employment, in order to capture, collect, and store an individual's biometric identifiers or biometric information, especially a fingerprint or hand geometry scan, and biometric information derived from it.

16.     BIPA further obligates Defendant to inform its employees in writing that a biometric identifier or biometric information is being collected or captured; to tell its employees in writing for how long it will store their biometric data or information and any purposes for which biometric information is being captured, collected, and used; and to make available a written policy disclosing when it will permanently destroy such information.

17.     BIPA makes all of these requirements a *precondition* to the collection or recording of fingerprints, hand geometry scans, or other associated biometric information – under the Act, no biometric identifiers or biometric information may be captured, collected, purchased, or otherwise obtained if these pre-capture, pre-collection, pre-storage, or pre-obtainment requirements are not met.

18.     The State of Illinois takes the privacy of biometric data seriously. There is no realistic way, absent surgery, to reassign someone's biometric data. A person can obtain a new social security number, but not a new hand, which makes the protection of, and control over, biometric identifiers and biometric information particularly important – particularly given the increasing use of biometric

information or identifiers in the stream of commerce and financial transactions and the ever-increasing rate of corporate data breaches.

19.     The Illinois Supreme Court has affirmatively stated that BIPA biometric privacy rights must be "**properly honored and protected.**" *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 36 (emphasis added).

## DEFENDANT'S BIOMETRIC SCANNING OF EMPLOYEES

20.     At relevant times, Defendant has taken the rather invasive and coercive step of requiring employees to be fingerprint scanned, and then using biometric information captured from those fingerprint scans, and data derived therefrom, to identify the employee and track employee work time.

21.     After an employee's fingerprint scans are captured, collected, and/or recorded by Defendant, employees are subsequently required to scan their fingerprint into one of Defendant's biometric time clocks when they clock in or out at work.

22.     Defendant captured, collected, stored, and/or otherwise obtained the employee's biometrics in order to identify the employee who is clocking in or out.

23.     Moreover, Defendant caused these biometrics to be associated with employees, along with other employee personal and work information.

24.     Defendant has a practice of using biometric time clocks to track its employees, albeit without regard to Illinois' requirements under BIPA.

25.     As part of the employee time-clocking process, Defendant caused biometrics from employee fingerprint scans to be recorded, collected, captured, and stored at relevant times.

26.     Defendant has not, on information and belief, properly informed employees in writing that a biometric identifier or biometric information is being captured, obtained, collected or stored; informed employees in writing of the specific purpose and length of term for which a biometric

identifier or biometric information is being collected, stored, and used; obtained employees' proper written consent to the capture, collection, obtainment or storage of their biometric identifier and biometric information derived from it; or obtained employees' executed written release as a condition of employment.

27.    Defendant further required Plaintiff to scan Plaintiff's fingerprint in order to use the biometric system, so that the timekeeping system captured, collected, stored, and/or otherwise obtained Plaintiff's fingerprint scan, matched Plaintiff's fingerprint scan biometrics, and associated Plaintiff's biometrics with Plaintiff's identity.

28.    Defendant did not at any time, on information and belief: inform Plaintiff in writing (or otherwise) that a biometric identifier and biometric information was being obtained, captured, collected, and/or stored, or of the specific purposes and length of term for which a biometric identifier or biometric information was being collected, captured, stored, and/or used; obtain, or attempt to obtain, Plaintiff's executed written release to have Plaintiff's biometrics captured, collected, stored, or recorded as a condition of employment – Plaintiff did not provide consent required by BIPA to the capture, collection, storage, obtainment, and/or use of Plaintiff's fingerprint or associated biometrics. Nor did Plaintiff know or fully understand that Defendant was collecting, capturing, and/or storing biometrics when Plaintiff was scanning Plaintiff's fingerprint; nor did Plaintiff know or could Plaintiff know all of the uses or purposes for which Plaintiff's biometrics were taken.

29.    Upon information and belief, Defendant does not have, and therefore has not publicly disclosed its retention schedule and guidelines for permanently destroying employee biometrics, if they exist.

30.    Defendant, on information and belief, has no written policy, made available to the public, that discloses its retention schedule and/or guidelines for retaining and then permanently destroying biometric identifiers and information.

Page 5 of 20

31.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA highlights why conduct such as Defendant's – where individuals are aware that they are providing a biometric but not aware of to whom or for what purposes they are doing so – is dangerous.

32.     That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers or information such as a fingerprint scan, and/or data derived therefrom, who exactly is collecting their biometric data, where it will be transmitted and for what purposes, and for how long.

33.     Thus, BIPA is the Illinois Legislatures expression that Illinois citizens have biometric privacy rights, as created by BIPA.

34.     Defendant disregarded these obligations and instead unlawfully collected, stored, and used employees' biometric identifiers and information, without ever receiving the individual's informed written consent as required by BIPA.

35.     Defendant's employees are not told what might happen to their biometric data if and/or when their work locations are sold, taken over by different management, or, worse, if and when Defendant's entire enterprises fold.

36.     Because Defendant neither published a BIPA-mandated data retention policy nor disclosed the purposes for their collection of biometric data, Defendant's employees have no idea whether Defendant sells, discloses, re-discloses, or otherwise disseminates his or her biometric data.

37.     Nor are Plaintiff and the putative Class told whom Defendant currently discloses his or her biometric data, or what might happen to his or her biometric data in the event of a buyout, merger, or a bankruptcy.

38.     By and through the actions detailed above, Defendant has not only disregard the Class' privacy rights, but it has also violated BIPA.

39.    Defendant's above-described use of biometrics benefits only Defendant. There is no corresponding benefit to employees: Defendant has required or coerced employees to comply in order to receive a paycheck, after they have been committed to the job.

40.    Plaintiff and the putative Class are aggrieved by Defendant's failure to destroy their biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of employees' last interactions with the company.

## ILLINOIS'S STRONG STANCE ON PROTECTION OF BIOMETRIC INFORMATION

41.    BIPA provides valuable privacy rights, protections, and benefits to employees in Illinois.

42.    For example, BIPA's requirements ensure that the environment for taking of biometrics is not forced or coerced; that individuals are freely advised that, by scanning one's fingerprint, the employer is capturing, extracting, creating, and recording fingerprint biometrics; that individuals can keep tabs on their biometric roadmaps *(e.g.,* who has their biometrics, for how long, and how it is being used), including after one's employment ceases, or after the employer stops storing the employee's biometrics if at all, when employer-employee files or policies may not be freely accessible; that individuals can evaluate the potential consequences of providing their biometrics; that companies must give individuals the right, and opportunity, to freely consent (or decline consent) before taking their biometrics; that, if the disclosure does not say so, the employee's biometrics will not be used for any other purpose except for employee time and attendance and will not be used to run a criminal background check; and that their biometrics are being handled with a measure of security. The BIPA-required environment for the taking of biometrics provides legislatively-imposed peace for biometric subjects.

43.    To this end, in passing the Biometric Information Privacy Act (hereinafter "the Act"), the Illinois General Assembly found:

(a) The use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings.

(b) Major national corporations have selected the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias.

(c) Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

(d) An overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information.

(e) Despite limited State law regulating the collection, use, safeguarding, and storage of biometrics, many members of the public are deterred from partaking in biometric identifier-facilitated transactions.

(f) The full ramifications of biometric technology are not fully known.

(g) The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

See, 740 ILCS 14/5, Legislative findings; intent.

44.    The law is specifically designed to require a company that collects biometrics to jump through several hoops, *before collection,* aimed, in part, at educating and protecting the person whose biometrics it is taking for its own use, and requiring signed, written consent attesting that the individual has been properly informed and has freely consented to biometrics collection.

45.    The Act defines "Biometric identifier" as:

a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry. Biometric identifiers do not include writing samples, written signatures, photographs, human biological samples used for valid scientific testing or screening, demographic data, tattoo descriptions, or physical descriptions such as height, weight, hair color, or eye color. Biometric identifiers do not include donated organs, tissues, or parts as defined in the Illinois Anatomical Gift Act or blood or serum stored on behalf of recipients or potential recipients of living or cadaveric transplants and obtained or stored by a

federally designated organ procurement agency. Biometric identifiers do not include
biological materials regulated under the Genetic Information Privacy Act. Biometric
identifiers do not include information captured from a patient in a health care setting
or information collected, used, or stored for health care treatment, payment, or
operations under the federal Health Insurance Portability and Accountability Act of
1996. Biometric identifiers do not include an X-ray, roentgen process, computed
tomography, MRI, PET scan, mammography, or other image or film of the human
anatomy used to diagnose, prognose, or treat an illness or other medical condition or
to further validate scientific testing or screening.

See, 740 ILCS 14/10.

46.    The Act defines "Biometric information" as:

any information, regardless of how it is captured, converted, stored, or shared, based
on an individual's biometric identifier used to identify an individual. Biometric
information does not include information derived from items or procedures excluded
under the definition of biometric identifiers.

See, 740 ILCS 14/10.

47.    The Act defines "Confidential and sensitive information" as:

personal information that can be used to uniquely identify an individual or an
individual's account or property. Examples of confidential and sensitive information
include, but are not limited to, a genetic marker, genetic testing information, a unique
identifier number to locate an account or property, an account number, a PIN number,
a pass code, a driver's license number, or a social security number.

See, 740 ILCS 14/10.

48.    The Act defines "Private entity" as:

any individual, partnership, corporation, limited liability company, association, or
other group, however organized. A private entity does not include a State or local
government agency. A private entity does not include any court of Illinois, a clerk of
the court, or a judge or justice thereof.

See, 740 ILCS 14/10.

49.    The Act defines "Written release" as:

informed written consent or, in the context of employment, a release executed by an
employee as a condition of employment

See, 740 ILCS 14/10.

50.    The Act requires:

A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

740 ILCS 14/15(a).

51.    Additionally, the Act provides:

No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(b).

52.    Further, the Act provides:

No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information.

740 ILCS 14/15(c).

53.    The Act also provides:

No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:

(1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure;

(2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or the biometric information or the subject's legally authorized representative;

(3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or

(4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

740 ILCS 14/15(d).

54.    Furthermore, the Act provides:

A private entity in possession of a biometric identifier or biometric information shall:

(1) store, transmit, and protect from disclosure all biometric identifiers and biometric information using the reasonable standard of care within the private entity's industry; and

(2) store, transmit, and protect from disclosure all biometric identifiers and biometric information in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information.

740 ILCS 14/15(e).

55.    BIPA provides statutory damages if an employer takes an employee's biometrics and invades an employee's privacy by circumventing BIPA's preconditions and requirements.

56.    The Act explicitly provides a private right of action for violations of the Act, and provides that a prevailing party "may recover for each violation:"

(1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;

(2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater;

(3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and

(4) other relief, including an injunction, as the State or federal court may deem appropriate.

740 ILCS 14/20.

57.    In enacting BIPA, the Illinois General Assembly explicitly singled out and bound employers to BIPA's requirements. 740 ILCS § 14/10 (defining "Written release" in the context of employment); 740 ILCS § 14/15(b)(3).

58.    In fact, BIPA requires express written consent not only in order to capture or collect biometrics in the first place, but in the context of employment, the requirement goes a step further: the employer must obtain "informed written consent," in the form of "a release executed by an employee," and further, the release must be executed "as a condition of employment." *Id.* These formalized protections enable employees to freely consent to the taking of their biometrics.

59.    Defendant violated these clear protections of the Act; Defendant violated, and upon information and belief, continue to violate its employees' biometric privacy rights.

### CLASS ALLEGATIONS

60.    Plaintiff brings this action on behalf of herself and pursuant to 735 ILCS 5/2-801 on behalf of a class (hereinafter the "Class") defined as follows:

> All persons who were enrolled in the biometric timekeeping system and subsequently used a biometric timeclock while employed/working for Defendant from five years preceding the filing of this action to the date a class notice is mailed in this action.

Excluded from the class are Defendant's officers and directors, Plaintiff's counsel, and any member of the judiciary presiding over this action.

61.    **Numerosity:** The exact number of class members is unknown and is not available to Plaintiff at this time, but upon information and belief, there are in excess of five hundred (500) potential class members, and individual joinder in this case is impracticable. Class members can easily be identified through Defendant's records and allowing this matter to proceed on a class basis will prevent any retaliation by Defendant against current employees who are currently having their BIPA rights violated.

62.    **Common Questions:** There are several questions of law and fact common to the claims of Plaintiff and the Class members, and those questions predominate over any questions that may affect individual Class members. Common questions include, but are not limited to, the following:

a.   whether Defendant has a practice of capturing or collecting employees' biometrics;

b.   whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of the individual's last interaction with Defendant, whichever occurs first;

c.   whether Defendant obtained an executed written release from fingerprint scanned employees before capturing, collecting, or otherwise obtaining employee biometrics;

d.   whether Defendant obtained an executed written release from fingerprint scanned employees, as a condition of employment, before capturing, collecting, converting, sharing, storing or using employee biometrics;

e.   whether Defendant provided a writing disclosing to employees the specific purposes for which the biometrics are being collected, stored, and used;

f.   whether Defendant provided a writing disclosing to fingerprint scanned employees the length of time for which the biometrics are being collected, stored, and used;

g.   whether Defendant's conduct violates BIPA;

h.   whether Defendant's conduct was negligent, reckless, or willful;

i.   whether Plaintiff and Class members are entitled to damages, and what is the proper measure of damages;

j.   whether Plaintiff and Class members are entitled to injunctive relief.

63.    **Adequacy of Representation:** Plaintiff will fairly and adequately represent and protect the interest of the class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the class, and Defendant has no defenses unique to Plaintiff.

64.    **Appropriateness:** Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable.

Further, it would be virtually impossible for the individual members of the Class to obtain effective relief because of the fear and likelihood of retaliation by Defendant against current employees bringing a civil action as an individual. Even if Class members were able or willing to pursue such individual litigation, a class action would still be preferable due to the fact that a multiplicity of individual actions would likely increase the expense and time of litigation given the complex legal and factual controversies presented in this Class Action Complaint. A class action, on the other hand, provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision before a single Court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

### COUNT I – FOR DAMAGES AGAINST DEFENDANT
### VIOLATION OF 740 ILCS 14/1, *ET SEQ.* – THE BIOMETRIC INFORMATION PRIVACY ACT
### INDIVIDUALLY AND ON BEHALF OF THE CLASS

65.    Plaintiff, individually and on behalf of all others similarly situated, repeats, re-alleges, and incorporates all preceding paragraphs as if fully set forth herein.

66.    BIPA is a remedial statute designed to protect employees, by requiring consent and disclosures associated with the handling of biometrics, particularly in the context of biometric technology. 740 ILCS 14/5(g), 14/10, and 14/15(b)(3).

67.    The Illinois General Assembly's recognition of the importance of the public policy and benefits underpinning BIPA's enactment, and the regulation of biometrics collection, is detailed in the text of the statute itself.

68.    Further, the Illinois Supreme Court, in a unanimous decision made clear that "Compliance should not be difficult." *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 37 (Jan. 25, 2019).

69.    Additionally, the Illinois Supreme Court has made clear that the Illinois Legislature intended to "subject[] private entities who fail to follow the statute's requirements to **substantial**

potential liability, including liquidated damages, injunctions, attorney fees, and litigation expenses 'for each violation' of the law (*id.* § 20) whether or not actual damages, beyond violation of the law's provisions, can be shown. *Id.* at ¶ 36 (emphasis added).

70.    "It is clear that the legislature intended for this provision to have substantial force." *Id.* at ¶ 37.

71.    Defendant has been and continues to be a "private entity."

72.    Defendant has been and continues to be a "private entity" in possession of Plaintiff's and other employees' biometrics, and it collected, captured, or otherwise obtained their biometric identifiers and biometric information within the meaning of the Act.

73.    Plaintiff and the putative Class have suffered an injury in fact based on Defendant's violations of their legal rights.

74.    Plaintiff has never been informed of the specific limited purposes or length of time for which Defendant collected, stored, or used her biometrics.

75.    Plaintiff has never been informed of any biometric data retention policy developed by Defendant, nor has she ever been informed of whether Defendant will ever permanently delete her biometrics.

76.    Plaintiff has never been provided with nor ever signed a written release allowing Defendant to collect, capture, store, or otherwise obtain her fingerprint print, hand geometry, or other biometrics.

77.    Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's violations of BIPA alleged herein.

78.    BIPA protects employees like Plaintiff and the putative Class from this precise conduct, and Defendant had no right to secure this data.

79.     Through BIPA, the Illinois legislature has created a right – a right to receive certain information prior to an employer securing their highly personal, private and proprietary biometric data – and an injury – not receiving this extremely critical information.

80.     At relevant times Defendant collected, captured, or otherwise obtained, Plaintiff's and other employees' biometric identifiers and biometric information based on those identifiers as defined by BIPA, 740 ILCS 14/10, through the imposition of biometric fingerprint scanning time clocks.

81.     In violation of 740 ILCS 14/15(b), Defendant has collected, captured, stored, and/or otherwise obtained Plaintiff's and other class members' biometric identifiers and biometric information, without:

    a.  informing Plaintiff and the Class (including, where applicable, their legal authorized representatives), in writing, that the biometric identifiers or biometric information were being obtained, collected, captured, and/or stored;

    b.  informing Plaintiff and the Class (including, where applicable, their legal authorized representatives), in writing, of the specific purpose and length of term for which the biometric identifiers or biometric information were being collected, stored, and used; and

    c.  receiving a written release executed by Plaintiff and/or Class members and executed by Plaintiff and/or Class members as a condition of employment.

82.     Defendant took Plaintiff's and other class members' fingerprint scans, and knowingly caused their biometrics to be captured, collected, stored, and/or otherwise obtained without making publicly available the required policy that explains, for example, any purposes for which the biometric identifiers and information were collected, a retention schedule, and guidelines for permanently destroying biometric identifiers and information.

83.     As a result of Defendant's above-described acts and omissions, Defendant has invaded the privacy of Plaintiff and the Class; it has unlawfully and coercively taken their biometrics; it has failed to provide them with information required by BIPA; it has deprived them of benefits, rights, opportunities and decisions conferred and required by the Illinois legislature via BIPA; and it illegally

captured, collected, recorded, possessed, converted, and/or stored their fingerprint scans, biometrics, and property.

84.   Accordingly, Defendant has negligently violated the BIPA, and Plaintiff and the Class have been damaged and are entitled to damages available under the BIPA, including liquidated damages of $1,000 per negligent violation, $5,000 per willful or reckless violation, or actual damages, whichever is greater. 740 ILCS 14/20(1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class of similarly situated individuals, prays for an Order as follows:

A.   Finding this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.*, and certifying the Class as defined herein;

B.   Designating and appointing Plaintiff as representative of the Class and Plaintiff's undersigned counsel as Class Counsel;

C.   Entering judgment in favor of Plaintiff and the Class and against Defendant;

D.   Awarding Plaintiff and the Class members liquidated damages of $1,000 per negligent violation, $5,000 per willful or reckless violation, or actual damages, whichever is greater, for each violation of BIPA;

E.   Awarding Plaintiff and the Class members reasonable attorneys' fees and costs incurred in this litigation; and

F.   Granting all such other and further relief as the Court deems just and appropriate.

## COUNT II – FOR INJUNCTIVE RELIEF AGAINST DEFENDANT
### VIOLATION OF 740 ILCS 14/1, *ET SEQ.* – THE BIOMETRIC INFORMATION PRIVACY ACT

85.   Plaintiff, individually and on behalf of all others similarly situated, repeats, re-alleges, and incorporates all preceding paragraphs as if fully set forth herein.

86.     BIPA provides for injunctive relief. 740 ILCS 14/20(4).

87.     Plaintiff and other Class members are entitled to an order requiring Defendant to make disclosures consistent with the Act and enjoining further unlawful conduct.

88.     First, Plaintiff seeks an order requiring Defendant to publicly disclose a written policy establishing any specific purpose and length of term for which Plaintiff and other employees' biometrics have been collected, captured, stored, obtained, and/or used, as well as guidelines for permanently destroying such biometrics when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first, as required by 740 ILCS 14/15(a).

89.     Second, Plaintiff seeks an order requiring Defendant to disclose whether Defendant has retained Plaintiff's and other employees' biometrics in any fashion, and if, when, and how such biometrics were permanently destroyed, consistent with BIPA.

90.     Third, due to the above-described facts, and Defendant's failure to make publicly available facts demonstrating BIPA compliance as BIPA requires, Defendant should be ordered to: (i) disclose if (and if, precisely how, and to whom) it has disseminated, sold, leased, traded, or otherwise profited from Plaintiff and other fingerprint scanned employees' biometrics, which is strictly prohibited under BIPA; and (ii) disclose the standard of care that it employed to store, transmit, and protect such biometrics, as provided under BIPA. 740 ILCS 14/15(c), (d), (e).

91.     Fourth, Defendant should be enjoined from further BIPA non-compliance and should be ordered to remedy any BIPA compliance deficiencies forthwith.

92.     Plaintiff's and other Class members' legal interests are adverse to Defendant's legal interests. There is a substantial controversy between Plaintiff and Class members and Defendant warranting equitable relief so that Plaintiff and the Class may obtain the protections that BIPA entitles them to receive.

93.    Plaintiff and the Class do not know what Defendant has done (or intends to do) with their biometrics. Absent injunctive relief, Defendant is likely to continue its BIPA non-compliance and Plaintiff and other Class members will continue to be in the dark on the subject.

94.    For the reasons set forth above, Plaintiff is likely to succeed on the merits of Plaintiff's claims.

95.    BIPA establishes the importance, value, and sensitive nature of biometrics, along with the need to protect and control it; Plaintiff is entitled to know what Defendant has done with it as set forth above, and to an affirmation and verification that it has been or will be permanently destroyed as required by 740 ILCS 14/15(a).

96.    The gravity of the harm to Plaintiff and the Class, absent equitable relief, outweighs any harm to Defendant if such relief is granted.

97.    As a result, Plaintiff requests commensurate injunctive relief.

**WHEREFORE**, Plaintiff, individually and on behalf of the class, prays for an Order as follows:

A.    Finding this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.*, and certifying the class defined herein;

B.    Designating and appointing Plaintiff as representative of the class and Plaintiff's undersigned counsel as class counsel;

C.    Entering judgment in favor of Plaintiff and the class and against Defendant;

D.    Awarding Plaintiff and the class members all damages available to Plaintiff and the class available under applicable law, including statutory or liquidated damages;

E.    Providing commensurate injunctive relief for Plaintiff and class members as set forth above;

F.     Awarding Plaintiff and the Class members reasonable attorneys' fees and costs incurred in this litigation; and

G.     Granting all such other and further relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: February 25, 2019

By: /s/ Brandon M. Wise
Brandon M. Wise – IL Bar # 6319580
Paul A. Lesko – IL Bar # 6288806
PEIFFER WOLF CARR & KANE, APLC
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
Ph: 314-833-4825
Email: bwise@pwcklegal.com
Email: plesko@pwcklegal.com

COUNSEL FOR THE PLAINTIFF AND THE PUTATIVE CLASS

Page 20 of 20

Electronically Filed
Kahalah A. Clay
Circuit Clerk
MARGARET SMITH
19L0188
St. Clair County
3/5/2019 11:46 AM
4154973

# IN THE TWENTIETH JUDICIAL CIRCUIT
## ST. CLAIR COUNTY
## STATE OF ILLINOIS

CASSANDRA BOYLE, INDIVIDUALLY AND )
ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, )
                                           )

    *Plaintiff,* )
                                           )

v. )    Case No.:  **19-L-188**

HARBOR FREIGHT TOOLS USA, INC., )    Judge:
                                           )

    **Serve:** )    **JURY TRIAL DEMANDED**
    **Corporate Creations Network** )
    **350 S Northwest Highway #300** )
    **Park Ridge, IL 60068** )

    *Defendant.* )

## Rule 222(b) Affidavit

1.    My name is Cassandra Boyle and I am above the age of majority and of sound mind to understand and execute this Affidavit.

2.    I have reviewed the Complaint to be filed in this matter and believe it to be true to the best of my knowledge.

3.    I believe that Defendant has harmed me in multiple ways, as outlined in the Complaint.

4.    Through the Complaint, I seek a recovery in excess of $50,000.00.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies that she verily believes the same to be true.

Executed: 2019-02-24 14:11:52 (UTC-06:00)

By: _____

APR 1 1 2019

IN THE TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY
STATE OF ILLINOIS

CASSANDRA BOYLE, INDIVIDUALLY AND )
ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, )
                                           )
       *Plaintiff,*                        )
                                           )
v.                                           )    Case No.: 19-L-188
                                           )
HARBOR FREIGHT TOOLS USA, INC.,       )
                                           )
       *Defendant.*                   )    **JURY TRIAL DEMANDED**

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND REQUEST FOR DISCOVERY ON CERTIFICATION ISSUES

In this case, Plaintiff Cassandra Boyle ("Plaintiff") alleges that Defendant Harbor Freight Tools USA, Inc. ("Harbor Freight" or "Defendant") systematically violated the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. This case is well suited for class certification pursuant to 735 ILCS 5/2-801. Specifically, Plaintiff seeks to certify a class consisting of several hundred or more former and current similarly-situated employees who worked for Harbor Freight in the State of Illinois who had their fingerprints unlawfully procured, collected, captured, received, otherwise obtained, or disclosed by Defendant during the applicable statutory period in violation of BIPA. The question of liability is a legal question that can be answered in one fell swoop. As Plaintiff's claims and the claims of similarly-situated individuals all arise from Defendant's uniform policies and practices, they satisfy the requirement of 735 ILCS 5/2-801 and should be certified. Notably, to Plaintiff's Counsels' knowledge, the only BIPA class certification decisions issued to date have granted class certification. See, *In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535 (N.D. Cal. 2018) (granting class certification); and Ex. A, Mem.

and Order, *Roberson v. Symphony Post Acute Care Network, et al.*, 17-L-733 (St. Clair County) (same).

Plaintiff moves for class certification to protect members of the proposed class, employees whose proprietary and legally protected personal and private biometric data was invaded by Defendant. Plaintiff believes that the evidence and argumentation submitted with this motion are sufficient to allow the class to be certified now. However, in the event the Court (or Defendant) wishes for the parties to undertake formal discovery prior to the Court's consideration of this motion, Plaintiff requests that the Court allow Plaintiff to supplement her briefing and defer the response and reply deadlines.

## I.    RELEVANT BACKGROUND

### A.   The Biometric Information Privacy Act

Major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became wary of this then-growing, yet unregulated, technology. *See* 740 ILCS 14/5.

The Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* was enacted in 2008, arising from concerns that these experimental uses of finger-scan technologies created a "very serious need of protections for the citizens of Illinois when it comes to biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. Under the Act, it is unlawful for a private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless it first:

> (1) Informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

2

> (2) Informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) Receives a written release executed by the subject of the biometric identifier or biometric information."

740 ILCS 14/15(b).

Although there may be benefits with using biometric time clocks in the workplace, there are also serious risks. Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – biometrics, including fingerprints, are unique, permanent biometric identifiers associated with each individual. These biometrics are biologically unique to the individual; once compromised, the individual has *no* means by which to prevent identity theft, unauthorized tracking, or other unlawful or improper use of this information. This exposes individuals to serious and irreversible privacy risks. For example, if a biometric database is hacked, breached, or otherwise exposed – as in the recent Equifax and Uber data breaches – individuals have no means to prevent the misappropriation and theft of their proprietary biometric makeup. Thus, recognizing the need to protect its citizens from harms like these, Illinois enacted BIPA specifically to regulate the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

### B. **Factual Allegations**

Plaintiff Cassandra Boyle filed this class action against Defendant on February 25, 2019, to redress Defendant's unlawful collection, use, storage, and disclosure of biometric information of its employees under BIPA. In her Class Action Complaint, Plaintiff provided detailed allegations that Defendant's employees were and continue to be required to scan their fingerprints for enrollment in the employee database, but are not: (1) informed in writing of the purpose and

length of time for which fingerprints were being collected, stored and used; (2) provided a publicly available retention schedule or guidelines for permanent destruction of the data; and (3) provided (nor did they execute) a written release, as required by BIPA. *See* Complaint ("Compl.") at ¶¶ 26, 28, and 29.

Plaintiff worked for Harbor Freight in the State of Illinois. *Id.* at ¶ 6. As an employee, Plaintiff was required to scan her fingerprint so Defendant could use it to track her time first in the employee database. *Id.* at ¶¶ 7-10, 20-22. Each time Plaintiff began and ended her workday, she was required to scan her fingerprint using the biometric timeclock device. *Id.* at ¶ 7. However, Defendant failed to inform its employees, including Plaintiff, of the extent of the purposes for which they collect employees' sensitive biometric data or to whom the data is disclosed, if at all. *Id.* at ¶¶ 28, 37. Defendant has similarly failed to provide its employees, including Plaintiff, with a written, publicly available policy identifying its retention schedule and guidelines for permanently destroying employees' hand-based biometrics when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by BIPA. *Id.* at ¶¶ 28-30. Defendant's employees are not told what might happen to their biometric data if and when its facilities go out of business or, worse, if and when Defendant's entire business folds. *Id.* ¶ 35. Because Defendant neither published a BIPA-mandated data retention policy nor disclosed the purposes for its collection of biometric data, employees, including Plaintiff, have no idea whether Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data. *Id.* at ¶ 36. Nor were employees told to whom Defendant currently discloses their biometric data or what might happen to their biometric data in the event of a merger or a bankruptcy. *Id.* at ¶ 37. Finally, Defendant never secured a written release executed by its employees, including Plaintiff, permitting it to collect, store, and use employees' biometric data, as required by BIPA. *Id.* at ¶ 26.

4

Accordingly, Defendant's practices violated BIPA. As a result of Defendant's violations, Plaintiff and similarly-situated individuals were subject to Defendant's uniform policies and practices and were victims of its scheme to unlawfully collect, store, and use employees' biometric data in direct violation of BIPA.

Plaintiff now seeks class certification for the following similarly-situated individuals, defined as:

> All persons who were enrolled in the biometric timekeeping system and subsequently used a biometric timeclock while employed/working for Defendant from five years preceding the filing of this action to the date a class notice is mailed in this action.

*Id.* at ¶ 60.

Given Defendant's standard practices defined above and the straightforward and common legal questions presented in this case, Plaintiff now moves for class certification. Notably, this motion is being filed shortly after the Complaint was filed and before the Defendant has responded. For the reasons discussed herein, Plaintiff's request should be granted.

## II.    STANDARD FOR CLASS CERTIFICATION

"The basic purpose of a class action is the efficiency and economy of litigation." *CE Design Ltd. v. C & T Pizza, Inc.*, 2015 IL App. (1st) 131465, ¶ 9 (Ill. App. Ct. May 8, 2015) (citing *Miner v. Gillette Co.*, 87 Ill. 2d 7, 14 (1981)). "In determining whether to certify a proposed class, the trial court accepts the allegations of the complaint as true and should err in favor of maintaining class certification." *CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶ 9 (citing *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 53 (2007)). Under Section 2-801 of the Code of Civil Procedure, a class may be certified if the following four requirements are met:

(1) the class is so numerous that a joinder of all members is impracticable;

5

(2) there are questions of fact or law common to the class that predominate over any questions affecting only individual members;

(3) the representative parties will fairly and adequately protect the interest of the class; and

(4) the class action is an appropriate method for the fair and efficient adjudication of the controversy.

*See Smith v. Illinois Cent. R.R. Co.*, 223 Ill. 2d 441, 447 (2006) (citing 735 ILCS 5/2-801). Notably, "[a] trial court has broad discretion in determining whether a proposed class meets the requirements for class certification." *CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶ 9 (citing *Ramirez*, 378 Ill. App. 3d at 53). Here, the allegations and facts in this case amply demonstrate that the four certification factors are met.

## III.    ARGUMENT

Plaintiff's claims here are especially suited for class certification because Defendant treated all employees identically for the purposes of applying BIPA. All of the putative class members in this case were uniformly subjected to the same illegal and unlawful collection, storage, and use of their biometric data that Defendant required as a condition of employment throughout the class period. Plaintiff meets each of the statutory requirements for maintenance of this suit as a class action. Thus, the class action device is ideally suited and is far superior to burdening the Court with many individual lawsuits to address the same issues, undertake the same discovery, and rely on the same testimony.

### A.    The Class Is So Numerous That Joinder of All Members Is Impracticable.

Numerosity is not dependent on a plaintiff setting forth a precise number of class members or a listing of their names. *See Cruz v. Unilock Chicago*, 383 Ill. App. 3d 752, 771 (2d Dist. 2008) ("Of course, plaintiffs need not demonstrate a precise figure for the class size, because a good-faith, nonspeculative estimate will suffice; rather, plaintiffs need demonstrate only that the class is

sufficiently numerous to make joinder of all of the members impracticable.") (internal citations omitted); *Hayna v. Arby's, Inc.*, 99 Ill. App. 3d 700, 710-11 (1st Dist. 1981) ("It is not necessary that the class representative name the specific individuals who are possibly members of the class."). Courts in Illinois generally find numerosity when the class is comprised of at least 40 members. *See Wood River Area Dev. Corp. v. Germania Fed. Sav. Loan Ass'n*, 198 Ill. App. 3d 445, 450 (5th Dist. 1990).

In the present case, there can be no serious dispute that Plaintiff meets the numerosity requirement. The class of potential plaintiffs is sufficiently large to make joinder impracticable.[1] As result of Defendant's violations of BIPA, Plaintiff and all similar-situated individuals were subject to Defendant's uniform policies and practices and were victims of Defendant's schemes to unlawfully collect, store and use their extremely personal and private biometric data in direct violation of BIPA. The precise number in the class cannot be determined until discovery records are obtained from Defendant. Nevertheless, class membership can be easily determined by reviewing Defendant's records. A review of Defendant's files regarding the collection, storage and use of employees' biometric data performed during the class period is all that is needed to determine membership in Plaintiff's proposed classes. *See e.g., Chultem v. Ticor Title Ins. Co.*, 401 Ill. App. 3d 226, 233 (1st Dist. 2010) (reversing Circuit Court's denial of class certification and holding that class was certifiable over defendants' objection that "the proposed class was not ascertainable, because the process of reviewing defendants' transaction files to determine class membership would be burdensome"); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539-40

---

[1]    Upon information and belief, Defendant employs hundreds of workers, many of whom are members of the class.

(6th Cir. 2012)[2] (rejecting the argument that manual review of files should defeat certification agreeing with district court's reasoning that, if manual review was a bar, "defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained," and citing numerous courts that are in agreement, including *Perez v. First Am. Title Ins. Co.*, 2009 WL 2486003, at *7 (D. Ariz. Aug. 12, 2009) ("Even if it takes a substantial amount of time to review files and determine who is eligible for the [denied] discount, that work can be done through discovery"). Once Defendant's records are obtained, the Court will know the precise number of persons affected.

Absent certification of this class action, Defendant's employees may never know that their legal rights have been violated and as a result may never obtain the redress to which they are entitled under BIPA. Illinois courts have noted that denial of class certification where members of the putative class have no knowledge of the lawsuit may be the "equivalent of closing the door of justice" on the victims. *Wood River Area Dev. Corp. v. Germania Fed. Sav. & Loan Assn.*, 198 Ill.App.3d 445, 452 (5th Dist. 1990). Further, recognizing the need to protect its citizens from harms such as identity theft, Illinois enacted BIPA specifically to regulate the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information. A class action would help ensure that Plaintiff and all other similarly-situated individuals have a means of redress against Defendant for its widespread violations of BIPA.

---

[2]    "Section 2-801 is patterned after Rule 23 of the Federal Rules of Civil Procedure and, because of this close relationship between the state and federal provision, 'federal decisions interpreting Rule 23 are persuasive authority with regard to questions of class certification in Illinois.'" *Cruz*, 383 Ill. App. 3d at 761 (quoting *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill.2d 100, 125 (2005)).

**B.    Common Questions Of Law And Fact Exist That Predominate Over Any Questions Solely Affecting Individual Members Of The Class.**

Courts analyze commonality and predominance under Section 2-801 by identifying the substantive issues that will control the outcome of the case. *See Bemis v. Safeco Ins. Co. of Am.*, 407 Ill. App. 3d 1164, 1167 (5th Dist. 2011); *Cruz*, 383 Ill. App. 3d at 773. The question then becomes whether those issues will predominate and whether they are common to the class, meaning that "favorable adjudication of the claims of the named plaintiffs will establish a right of recovery in other class members." *Cruz*, 383 Ill. App. 3d at 773. As stated by the Court of Appeals, the question is will "common . . . issues be the subject of the majority of the efforts of the litigants and the court[?]" *Bemis*, 407 Ill. App. 3d at 1168. The answer here is "yes."

At the heart of this litigation is the culpable conduct of the Defendant under BIPA. The issues are simple and straightforward legal questions that plainly lend themselves to class-wide resolution. Notwithstanding the clear and unequivocal requirements of the law, Defendant disregarded Plaintiff's and other similarly-situated individuals' statutorily-protected privacy rights and unlawfully collected, stored, and used their biometric data in direct violation of BIPA. Specifically, Defendant has violated BIPA because it failed to: (1) inform Plaintiff or the putative class in writing of the specific purpose and length of time for which their biometrics were being collected, stored, and used, as required by BIPA; (2) provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the putative class's biometrics, as required by BIPA; and (3) receive a written release from Plaintiff or the putative class to collect, capture, or otherwise obtain their biometrics, as required by BIPA. Defendant treated the entire proposed class in precisely the same manner, resulting in identical violations of BIPA. These common employment practices create common issues of law and fact. In fact, the legality of

9

Defendant's collection, storage, and use of its employees' biometric data is the focus of this litigation.

Indeed, once this Court determines whether Defendant's practice of collecting, storing, and using individuals' biometric data without adhering to the specific requirements of BIPA constitutes violations thereof, liability for the claims of class members will be determined in one stroke. The material facts and issues of law are substantially the same for the members of the class, and therefore these common issues could be tried such that proof as to one claimant would be proof as to all members of the class. This alone establishes predominance. The only remaining questions will be whether Defendant's violations caused members of the class to suffer damages and the proper measure of damages and injunctive relief, which in and of themselves are questions common to the class. Accordingly, a favorable adjudication of the Plaintiff's claims in this case will establish a right of recovery to all other class members, and thus the commonality and predominance requirements weigh in favor of certification of the class.

**C.    The Named Plaintiff and Class Counsel Are Adequate Representatives of The Class.**

When evaluating adequacy, courts look to whether the named plaintiff has the same interests as those of the class and whether he or she will fairly represent them. *See CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶ 16. In this case, Plaintiff's interest arises from statute. The class representative, Cassandra Boyle, is a member of the proposed class and will fairly and adequately protect the class's interests. Plaintiff, as a condition of employment, was required to scan her fingerprint to enable Defendant to use it as an authentication method to track her time. Defendant subsequently stored Plaintiff's hand-based biometrics in its database(s). Each time Plaintiff began and ended her workday, she was required to scan her finger. Plaintiff has never been informed of the specific limited purposes (if any) of length of time for which Defendant collected, stored, or

used her fingerprints. Plaintiff has never been informed of any biometric data retention policy developed by Defendant, nor has she ever been informed of whether Defendant will ever permanently delete any stored biometrics. Finally, Plaintiff has never been provided nor did she ever sign a written release allowing Defendant to collect, store, or use her biometrics. Thus, Plaintiff was a victim of the same uniform policies and practices of Defendant as the individuals she seeks to represent and is not seeking any relief that is potentially antagonistic to other members of the class. What is more, Plaintiff has the interests of those class members in mind, as demonstrated by her willingness to sue on a class-wide basis and step forward as the class representative, which subjects her to discovery. This qualifies her as a conscientious representative plaintiff and satisfies the adequacy of representation requirement.

Proposed Class Counsel, Peiffer Wolf Carr & Kane, APLC ("PWCK"), will also fairly and adequately represent the class. Proposed Class Counsel are highly qualified and experienced attorneys. (*See* Exhibit B - PWCK Firm Resume). PWCK attorneys, are recognized attorneys in class action lawsuits and have been designated as class counsel in numerous class actions in state and federal courts. (*Id.*). Thus, proposed Class Counsel, too, are adequate and have the ability and resources to manage this lawsuit.

**D.    A Class Action Is The Appropriate Method For Fair And Efficient Adjudication Of This Controversy.**

Finally, a class action is the most appropriate method for the fair and efficient adjudication of this controversy, rather than bringing individual suits which could result in inconsistent determinations and unjust results. "It is proper to allow a class action where a defendant is alleged to have acted wrongfully in the same basic manner toward an entire class." *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corporation*, 345 Ill. App. 3d 992, 1003 (2d Dist. 2004). "The purported class representative must establish that a successful adjudication of its individual

11

claims will establish a right of recovery or resolve a central issue on behalf of the class members."
*Id.*

Here, Plaintiff's claim stems from Defendant's common and uniform policies and practices, resulting in common violations of BIPA for all members of the class. Thus, class certification will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. *Wenthold v. AT&T Technologies, Inc.*, 142 Ill. App. 3d 612 (1st Dist. 1986). Without a class, the Court would have to hear dozens of additional individual cases raising identical questions of liability. Moreover, class members are better served by pooling resources rather than attempting to litigate individually. *CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶¶ 28-30 (certifying TCPA class where statutory damages were alleged and rejecting arguments that individual lawsuits would be superior). In the interests of justice and judicial efficiency, it is desirable to concentrate the litigation of all class members' claims in a single forum. For all of these reasons, the class action is the most appropriate mechanism to adjudicate the claims in this case.

   **E.    In The Event The Court Or Defendant Seeks More Factual Information Regarding This Motion, The Court Should Allow Supplemental And Deferred Briefing Following Discovery.**

There is no meaningful need for discovery for the Court to certify a class in this matter; Defendant's practices and policies are uniform. If, however, the Court wishes for the Parties to engage in discovery, the Court should keep the instant motion pending during the discovery period, allow Plaintiff a supplemental brief, and defer Defendant's response and Plaintiff's reply. Plaintiff is moving as early as possible for class certification in part to avoid the "buy-off problem," which occurs when a defendant seeks to settle with a class representative on individual terms in an effort to moot the class claims asserted by the class representative. Plaintiff is also moving for class certification now because the class should be certified, and because no meaningful discovery is

necessary to establish that fact. The instant motion is far more than a placeholder or barebones memorandum. Rather, Plaintiff's full arguments are set forth based on the facts known at this extremely early stage of litigation. Should the Court wish for more detailed factual information, the briefing schedule should be extended.

## IV.    __Conclusion__

For the reasons stated above, Plaintiff respectfully requests that the Court enter an Order: (1) certifying Plaintiff's claims as a class action; (2) appointing Plaintiff Cassandra Boyle as Class Representative; (3) appointing Peiffer Wolf Carr & Kane as Class Counsel; and (4) authorizing court-facilitated notice of this class action to the class. In the alternative, this Court should allow discovery, allow Plaintiff to supplement this briefing, and defer response and reply briefs.


Date:    May 7, 2019                                Respectfully Submitted,

                                                    By: _/s/ Brandon M. Wise_____
                                                    Brandon M. Wise – #6319580
                                                    Paul A. Lesko - #6288806
                                                    **PEIFFER WOLF CARR & KANE, APLC**
                                                    818 Lafayette Ave., Floor 2
                                                    St. Louis, Missouri 63104
                                                    314.833.4825
                                                    bwise@pwcklegal.com
                                                    plesko@pwcklegal.com

### CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2019, I filed the foregoing document with the clerk of the Court using the Illinois E-Filing System, which should further distribute a true and accurate copy of the foregoing to all counsel of record. Additionally, a true and accurate copy of the foregoing will be served on the following via email:

Joel C. Griswold – jcgriswold@bakerlaw.com
Bonnie Keane DelGobbo – bdelgobbo@bakerlaw.com
Baker Hostetler
191 N Wacker Dr., Suite 3100
Chicago, IL 60606
                                        _/s/ Brandon M. Wise_____

13

EXHIBIT A

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

| | | |
|---|---|---|
| SAROYA ROBERSON, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 17 -L- 733 |
| v. | ) ) | |
| SYMPHONY POST ACUTE CARE NETWORK; SYMPHONY SYCAMORE LLC; SYMPHONY HEALTHCARE LLC; SYMPHONY M.L. LLC; SYMPHONY MONARCH HOLDINGS, LLC; and DOE DEFENDANTS 1-100, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

```
              ┌─────────────────────────┐
              │          FILED          │
              │     ST. CLAIR COUNTY    │
              │                         │
              │       MAR 1 2 2019      │
              │                         │
              │       Kahlah a. Clay    │
              │  35      CIRCUIT CLERK   │
              └─────────────────────────┘
```

## MEMORANDUM AND ORDER
## ON CLASS CERTIFICATION

The case comes before the Court on Plaintiff's Motion for Class Certification ("Motion").

The issues have been briefed and argued by the parties.[1] The Court hereby **ORDERS**:

I.    **NATURE OF THE CASE AND PLAINTIFF'S MOTION FOR CLASS CERTIFICATION.**

Plaintiff Saroya Roberson worked at a nursing home in Swansea, Illinois. Plaintiff alleges

that as part of timekeeping while she worked at this location, Defendants and others captured

her biometric information or biometric identifiers (a palm scan) within the meaning of the

Illinois Biometric Privacy Information Act, 740 ILCS 14/1 ("BIPA"). Defendants' opposition brief

does not dispute Roberson's biometric information or biometric identifiers were so captured.

BIPA manifests the Illinois General Assembly's findings that:

---

[1] Arguments were heard on December 20, 2018 before Judge Julia R. Gomric. On February 8, 2019, after hearing, but before Judge Gomric ruled on the pending Motion for Class Certification, the court granted Symphony Sycamore LLC's Motion for Substitution as a Matter of Right, and this case was subsequently assigned to the undersigned. The court has reviewed the court file and report of proceedings held on December 20, 2018 and is ready to proceed without the need for additional hearing.

1

(1) Biometrics are uniquely sensitive identifiers. "Biometrics are unlike other unique identifiers . . . [and] are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS § 14/5(c).

(2) Biometric technology is a new frontier subject to unpredictable developments. "The full ramifications of biometric technology are not fully known." *Id.* at § 14/5(f).

(3) People are apprehensive of transactions involving their biometrics. The "overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information" and are "deterred from partaking in biometric identifier-facilitated transactions." *Id.* at § 14/5(d)-(e).

(4) Regulation of biometric collection, use, and storage serves the public interest. The "public welfare, security and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id.* at § 14/5(g).

Accordingly, BIPA puts certain requirements on parties dealing with biometric identifiers or biometric information, including:

(b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/5(b) (2018).

2

Plaintiff alleges none of these requirements were met when capturing her biometric

information. Defendants' opposition to the Motion does not dispute this.

BIPA further provides a right of action for violations of its requirements:

> Sec. 20. Right of action. Any person aggrieved by a violation of this Act
> shall have a right of action in a State circuit court . . . against an offending
> party. A prevailing party may recover for each violation:
>
> (1) against a private entity that negligently violates a provision of this Act,
> liquidated damages of $1,000 or actual damages, whichever is greater;
>
> (2) against a private entity that intentionally violates a provision of this
> Act, liquidated damages of $5,000 or actual damages, whichever is
> greater; . . . .

740 ILCS 14/20 (2018). Plaintiff brought this action pursuant to these and other provisions of

BIPA.

Plaintiff alleges the Swansea, Illinois location where her biometric identifiers were

captured is part of a network, the Symphony Post Acute Network ("SPAN" or the "Network").

She seeks to certify a class of Illinois citizens who had their biometric information or biometric

identifiers captured, collected, *etc.* at any Illinois location in the Network (and associated

subclasses discussed below):

> All Illinois citizens whose biometric information was collected, captured, purchased,
> received through trade, or otherwise obtained in Illinois at any location associated with
> the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, as set
> forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*

> Excluded from the proposed Class are employees, officers, directors, subsidiaries and
> affiliates of any person or business associated with the Symphony Post Acute Care
> Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court
> presiding over this action.

II.    **LAW REGARDING A DETERMINATION OF CLASS CERTIFICATION.**

"In determining whether to certify a proposed class, the trial court . . . should avoid

3

deciding the underlying merits of the case or resolving unsettled legal questions." *CE Design Ltd. v. C & T Pizza, Inc.*, 2015 IL App (1st) 131465 (2015), ¶ 9. "In making its decision as to whether to certify a class, the court may consider any matters of fact or law properly presented by the record, which includes the pleadings, depositions, affidavits, answers to interrogatories, and any evidence that may be adduced at the hearings." *Bueker*, 2016 IL App (5th) 150282 at ¶ 22. "To determine whether the proposed class should be certified, the court accepts the allegations of the complaint as true." *Clark*, 343 Ill. App. 3d at 544-45. *See also CD Design*, 2015 IL App (1st) 131465 at ¶ 9 ("In determining whether to certify a proposed class, the trial court accepts the allegations of the complaint as true . . . ."); *S37 Mgmt.*, 2011 IL App (1st) 102496 at ¶ 15 (same).

The factors which the Court must consider on a motion for class certification are the familiar framework established by statute. For a suit to proceed as a class action in Illinois, the Court must find that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class, which predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interests of the class; and (4) a class action is an appropriate method for the fair and efficient adjudication of the controversy. 735 ILCS 5/2-801 (2018). *See also e.g. Clark, et al. v. TAP Pharm. Prods., Inc., et al.*, 343 Ill. App. 3d 538, 544-45 (5th Dist. 2003).

III.    **FIRST FACTOR: NUMEROSITY (735 ILCS 5-2/801(1)).**

Section 801(1) requires not only that the number of plaintiffs be numerous, but also that joinder of plaintiffs in one individual action be impractical. 735 ILCS 5/2-801(1). Where there are a number of potential claimants, and the individual amount claimed by each is small,

4

making redress on an individual level difficult, if not impossible, Illinois courts have been particularly receptive to proceeding on a class action basis. *Miner v. Gillette Co.*, 87 Ill.2d 7 (1981). Avoiding unnecessary burdens on the courts themselves is also a legitimate concern. "Affirming the trial court's class certification order will avoid the filing of numerous, repetitive cases placing a burden on the court." *Fakhoury v. Pappas*, 395 Ill. App. 3d 302, 316 (1st Dist. 2009).

Plaintiff states that Defendants have identified, at a minimum, 552 workers who would be members of the class from the Swansea, Illinois location alone. Defendants' opposition to the Motion does not dispute this; in fact, Defendants' opposition does not mention numerosity at all. Accordingly, the Court finds that the numerosity factor is satisfied. *See Wood River Area Dev. Corp. v. Germania Fed. Sav. and Loan Ass'n*, 198 Ill. App. 3d 445 (5th Dist. 1990).

IV.    **SECOND FACTOR: COMMON AND PREDOMINANT ISSUES OF FACT OR LAW (735 ILCS 5-2/801(2)).**

Section 801(2) requires "questions of fact or law common to the class." 735 ILCS 5/2-801(2) (2018). As the statute is phrased in the alternative, certification requires "only that there be either a predominating common issue of law or fact, not both." *Martin v. Heinold Commodities, Inc.*, 117 Ill.2d 67, 81 (1994).

Plaintiff suggests that a case presents common issues when defendants have engaged in the same or similar course of conduct, and that this is particularly true where – as here – the claims are based predominantly upon the application of a single statute or statutory scheme. "A common question may be shown when the claims of the individual class members are based upon the common application of a statute . . . ." *Clark*, 343 Ill. App. 3d at 548. *See also Bueker*, 2016 IL App (5th) 150282, ¶ 27 ("With regard to the commonality requirement, a common issue

may be shown where the claims of the individual class members are based upon the common

application of a statute or where the proposed class members are aggrieved by the same or

similar conduct or pattern of conduct."); *Hall*, 376 Ill. App. 3d at 831 (same).[2] Defendants'

opposition to the Motion did not dispute this general premise.

Thus, according to Plaintiff, "Examination quickly establishes that commonality is easily

satisfied in this case. All class members are citizens of Illinois. All are proceeding principally

under a single Illinois statute, BIPA. Each was subjected to an identical course of conduct by

defendants: The capture of their biometric information."

Plaintiff further goes on to enumerate specific questions of law or fact which she states

will predominate:

a.    Whether the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class?

b.    If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants inform the Plaintiff and the Class in writing that a biometric identifier or biometric information was being collected or stored?

c.    If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants inform the Plaintiff and the Class in writing of the specific purpose and length of term for which a biometric identifier or biometric information was being collected, stored, and used?

d.    If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants receive a written release executed by the Plaintiff and the Class of the biometric identifier or biometric information or the Plaintiff's or Class' legally

---

[2] Bearing in mind that the court does not consider the merits at this stage, see *supra*, the Court also does not consider which class members will ultimately prevail. "That some members of the class are not entitled to relief because of some particular factor will not bar the class action." *Clark*, 343 Ill. App. 3d at 549. *See also Hall*, 376 Ill. App. 3d at 831-32 ("That some members of the class are not entitled to relief will not bar the class action.").

authorized representative?

e.    If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first?

f.    Whether Defendants' violations of BIPA were negligent, or instead, intentional or reckless, within the meaning of 740 ILCS 14/20?

Thus, Plaintiff summarizes: "Defendants' compliance with the requirements of BIPA – a single statutory scheme – is the central question in this case. This same question will predominate for each and every class member."

Defendants argue that common questions do not predominate in this case. Defendants assert that "'The purpose of the predominance requirement is to ensure that the proposed class is sufficiently cohesive to warrant adjudication by representation . . .' *Smith v. Illinois Cent. R.R. Co.*, 223 Ill. 2d 441, 448 (2006)." According to Defendants, to satisfy this predominance requirement, a plaintiff must show that "successful adjudication of the class representative's individual claim 'will establish a right of recovery in other class members' such that 'all that should remain is for other class members to file proof of their claim., *Id.* (quotation omitted); *see also Mashal v. City of Chicago*, 2012 IL 112341, ¶33 (same)."

Defendants then go on to provide a list of issues they claim defeat commonality and predominance in this case:

a.    whether a class member used the same type of "finger or hand print reader/scanner" that Roberson used,

7

b.    whether a class member has suffered a sufficient injury to invoke BIPA's
private right of action,

c.    whether a class member has suffered actual injury such that actual
damages could be recovered in excess of the BIPA's liquidated damages,

d.    whether that injury exceeds the liquidated damages provision in BIPA,

e.    whether that injury was suffered at the hands of any person or business
that is in fact "associated with the Symphony Post-Acute Care Network,
a/k/a Symphony Post-Acute Network,"

f.    whether that entity acted negligently or willfully with respect to that
particular class member,

g.    whether that class member's claim is subject to any affirmative defenses,
like consent or ratification.

First, since the hearing on Plaintiff's Motion on December 20, 2018, the Supreme Court

of Illinois has ruled that "an individual need not allege some injury or adverse effect, beyond

violation of this or her right under [BIPA], in order to qualify as an 'aggrieved' person and be

entitled to seek liquidated damages and injunctive relief pursuant to the Act." *Rosenbach v. Six*

*Flags Entertainment Corp.*, 2019 IL 123186, slip op. at p.13 (Ill. Jan. 25, 2019).  As such, many of

the arguments raised above are moot.

Moreover, it is well-established that by themselves, such issues do not defeat class

certification.  "Individual questions of injury and damages do not defeat class certification."

*Clark*, 343 Ill. App. 3d at 549. *See also Hall*, 376 Ill. App. 3d at 832 (same).  At most, if damage

questions do present significant issues, they can be handled in ancillary proceedings.  "It is

appropriate to litigate the questions of law or fact common to all members of the class and,

after the determination of the common questions, to determine in an ancillary proceeding or

proceedings the questions that may be peculiar to individual class members." *Clark*, 343 Ill.

8

App. 3d at 548 (internal quotations omitted). In fact, Defendants' own cited authority establishes that these differences (if true) are generally not grounds to defeat class certification. *Walczak v. Onyx Acceptance Corp.*, 365 Ill. App. 3d 664, 679 (2nd Dist. 2006). ("Moreover, we note that, generally, individual counterclaims or defenses do not render a case unsuitable for class action.")

More broadly, Defendants' characterization of the common issues in this case, and which of them will predominate, is questionable. *Smith* was a toxic tort case involving a train derailment, and then a resulting chemical spill, with all the attenuated questions as to proximate causation of bodily injury resulting from a complicated series of events. *Smith*, 233 Ill.2d 442-58. This is not that case. This case involves a single statutory scheme – BIPA – and the issues presented can be summarized in a straightforward way: Did the Network capture biometric information from members of the class, and if so, did they comply with BIPA while doing so? These questions are what will consume "the bulk of the time at trial." *Smith*, 233 Ill.2d at 458.

That BIPA's straightforward, statutory requirements may have been met in some cases, but not others, does not preclude class certification, as Defendants suggest. First, this invites the Court to determine the merits of the case, which the Court does not do at this stage, as has already been established.

Second, the fact that some class members may recover, but not all, is no impediment to class certification. "That some members of the class are not entitled to relief because of some particular factor will not bar the class action." *Clark*, 343 Ill. App. 3d at 549. *See also Hall*, 376 Ill. App. 3d at 831-32 ("That some members of the class are not entitled to relief will not bar the

9

class action.").

Third, the flexibility of the class action procedure ensures that even if the issues Defendants raise do become significant at some future point in time, the Court has the ability to address such matters then. "If individual damage determinations are necessary, the court can utilize various procedures to determine damages, including the creation of subclasses." *Bueker*, 2016 IL App (5th), ¶ 31 (citing *Hall*, 376 Ill. App. 3d at 832). "Furthermore, if the class becomes unmanageable at some later time in the litigation, the court always has the option to set aside the class certification or a portion of it." *Id.* (citing *Purcell & Wardrope Chtd. v. Hertz Corp.*, 175 Ill.App.3d 1069, 1075 (1st Dist. 1988)).

Finally, while the Court finds that common questions of fact or law will predominate this case as a whole, it alternately finds that issue certification would be appropriate as well. Even in cases involving the most complex questions of injury or damages – and again, this is not that case, as it arises under a single simple statute – classes may be certified as to issues, such as legal issues, or the issue of liability. Even the cases Defendants themselves cite recognize this. *See e.g. Smith*, 223 Ill.2d at 457 ("the trial court in this case did not limit class certification to the issue of liability . . . ."); *Bueker*, 2016 IL App (5th) 150282, ¶ 34 (courts have the ability to limit certification for liability purposes only). Thus, in the alternative, the commonality and predominance of legal and liability issues in this case demonstrate it is also appropriately suited for certification as to common legal issues, and to issues concerning liability.

## V.    THIRD FACTOR: ADEQUATE REPRESENTATION OF THE INTERESTS OF THE CLASS (735 ILCS 5-2/801(3)).

Section 801(3) requires that the "representative parties will fairly and adequately protect the interests of the class." 735 ILCS 5/2-801(2) (2018). Adequate representation has

10

two components: (1) adequacy of the named Plaintiff; and (2) adequacy of the named Plaintiff's attorneys. *See Miner v. Gillette Co.*, 87 Ill.2d 7 (1981). As Defendant posits, "[t]he purpose of the adequate representation requirement is to ensure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim. *Walczak*, 365 Ill. App. 3d at 678.

Defendants do not argue that Plaintiff's attorneys are inadequate. Accordingly, the Court accepts that they will provide proper, efficient, and appropriate protection of the interests of the class in presenting the claims.

Defendants do, however, challenge the adequacy of Plaintiff Roberson. The principal argument made by Defendants is that the interests of Roberson are antagonistic to those of the class, as class members may want to seek a monetary award, and that (according to Defendants) during her deposition Roberson disclaimed any intention of seeking a monetary recovery.

This is wholly unpersuasive. Plaintiff, by way of her pleadings, discovery responses, statements of her attorneys, and otherwise, has made it abundantly clear on multiple occasions that she seeks a monetary recovery in this action, not only on her own behalf, but also on behalf of the other class members. Her deposition responses did not contradict that. In fact, Plaintiff stated she wants the law (BIPA) enforced, and BIPA expressly provides for monetary awards.

The rest of Defendants' adequacy arguments are much in the same vein. Quizzing Plaintiff on what she understands about Defendants' corporate structure, or how the law interprets "injury" or "damages," does nothing to demonstrate Plaintiff's inadequacy as a class

11

representative, as it does nothing to show that Plaintiff is either antagonistic to the class or will fail to properly pursue the interests of the class.  It merely demonstrates that Plaintiff, a layperson, does not understand the intricacies of the law or lawsuits.  But that is why a representative is – not only encouraged, but outright *required* – to hire effective legal counsel.

In short, the quantum of understanding necessary on the part of a representative is not nearly as complex as Defendants would have it.  "The plaintiff class representative need only have a marginal familiarity with the facts of his case and does not need to understand the legal theories upon which his case is based to a greater extent." *Clark*, 343 Ill. App. 3d at 550-51 (internal quotations omitted). The Court finds that the adequacy of representation requirement is fulfilled in this case.

## VI.     FOURTH FACTOR: THE CLASS ACTION PROCEDURE IS THE APPROPRIATE METHOD FOR THE FAIR AND EFFICIENT ADJUDICATION OF THE CONTROVERSY (735 ILCS 5-2/801(4)).

Finally, the fourth statutory factor requires the Court to consider whether "[t]he class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(d) (2018).  The balance of Defendants' remaining arguments are entered on this factor.

One of these arguments centers around who was Plaintiff's employer.  Defendants seem to invest this with independent legal significance.  But this was already addressed in the context of Defendants' § 2-615 motion to dismiss.  The terms "employer" and "employee" appear nowhere in BIPA, nor do any related terms.  In fact, BIPA expressly contemplates many circumstances well outside the employment context, such as "finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14-5(b) (2018).

Accordingly, dividing the world up into "Employer Defendants" and "Non-Employer

Defendants" is meaningless for purposes of BIPA liability, which applies to any "private entity"
(740 ILCS 14/10-15 (2018)) who constitutes an "offending party" (740 ILCS 14-20 (2018)).

To the extent Defendants' argument asks this Court to first construe those terms, and
then to apply them to the facts this case, the Court must decline. This involves disputed
issues of fact, going to the merits of the case, and/or unsettled legal issues. As previously
established, it is not the province of the Court to decide these issues on a motion to certify a
class. Nor will the Court render an advisory opinion. Indeed, issues like this weigh affirmatively
in *favor* of class certification, as they will be common questions to which any affected class
member will seek an answer – no matter what that answer may be.

Much the same is true for Defendants' other arguments, which may be broadly
classified as "corporate liability." Defendants claim each Network location is independently
owned and operated, and argue that only some defendants will be liable as to some class
members, mentioning in passing things such as the statutes regarding limited liabilities.
Defendants make a further argument that they cannot be held liable for anything other than
events occurring in Swansea. Defendants even go so far as to as to argue there are
"constitutional concerns" as to the rights of any non-party entities. Defendants do not provide
any explanation, however, as to how Defendants would have standing to raise any such
concerns on behalf of entities with whom they also disavow any connection.

For her part, Plaintiff points out that she has pleaded from the outset of the case a
variety of theories assessing mutual liability of the Network. Those theories include topics such
as *respondeat superior*, alter ego, agency, joint enterprise, civil conspiracy, *etc.* Plaintiff points
out any assertion by Defendants as to who did or did not operate any given Network location

simply begs the questions this lawsuit will answer.  Plaintiff further contends that the fact Defendants raise these common questions shows all the more strongly why this case should proceed as a class action.

Both sides have presented discovery responses, discovery productions, public documents, Network documents, *etc.* in support of their positions.  The Court has reviewed all of these materials.  The Court finds that none of these materials conclusively resolves such issues either way.

Accordingly, the Court concludes that the parties have legitimate disputes of material facts over these issues, and those issues intersect in several instances with unresolved questions of law.  The Court further finds that many of these arguments go to the merits of the case.  As such, the Court will not resolve them on a motion for class certification.  Nor will the Court issue an advisory opinion.

Once again, the presence of such sweeping issues – essentially, "who is liable for what, and to whom" – argues in favor of class certification, not against it.  Seeking the answers to these questions – questions applicable across the class, and the common answers which will be generated – makes proceeding on a class basis an appropriate method for the fair and efficient adjudication of these controversies.

VII.    **ORDER AND FINDINGS.**

Pursuant to the foregoing analysis, the Court finds the case is proper to proceed as a class action in accordance with 735 ILCS 5/2-801 (2018).  The Court hereby certifies the following class:

> All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at any location associated with

14

the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*

Excluded from the proposed Class are employees, officers, directors, subsidiaries and affiliates of any person or business associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court presiding over this action.

The Court also finds it appropriate to certify the following subclass:

All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network location in Swansea, Illinois, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*

Excluded from the proposed Class are employees, officers, directors, subsidiaries and affiliates of any person or business associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court presiding over this action.

The Court finds it appropriate to certify each of these classes as to all issues in this case. The Court further finds it appropriate to certify these classes as to legal and factual issues concerning the liability of the Network and those associated with it. The Court reserves jurisdiction to certify further subclasses or otherwise amend these certifications as circumstances warrant.

**SO ORDERED:**

**DATE:** March 12, 2019.

Hon. Kevin T. Hoerner

15

# EXHIBIT B

# PEIFFER WOLF CARR & KANE, APLC

Peiffer Wolf Carr & Kane, APLC ("PWCK") was founded in 2013. Joseph Peiffer, PWCK's managing partner, previously was a litigation partner at Fishman Haygood, LLP in New Orleans. PWCK handles a wide variety of cases, including a variety of collective, class, and mass actions. Since its inception, PWCK has acquired talented attorneys from coast to coast, becoming a national litigation firm.

MAIN OFFICE
201 St. Charles Avenue, Suite 4314
New Orleans, LA 70170
Phone: 504-523-2434

ST. LOUIS OFFICE
818 LAFAYETTE AVE., FLOOR 2
St. Louis, MO 63104
Phone: 314-833-4827

CLEVELAND OFFICE
1422 Euclid Avenue, Suite 1610
Cleveland, OH 44115
Phone: 216-589-9280

LOS ANGELES OFFICE
5042 Wilshire Blvd. #304
Los Angeles, CA 90036
Phone: 415-766-3545

SAN FRANCISCO OFFICE
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Phone: 415-766-3544

ROCHESTER OFFICE
1150-J Pittsford-Victor Road, 1st Floor
Pittsford, NY 14534
Phone: 585-310-5140

1

## ATTORNEY PROFILES

**Brandon Wise** joined the firm after managing his own solo practice that focus on class, collective, and employment matters. Brandon has successfully litigated collective and class action cases in St. Louis, Southern Illinois, and Central Illinois. Brandon has served as class or collective counsel in the following resolved collective and class matters:

*Volz, et al. v. Provider Plus, Inc., et al.*, a Fair Labor Standards Act ("FLSA") collective action involving 45 collective action members. The confidential settlement agreement was approved by Judge Mummert within hours of its submission to the court.

*Carver, et al. v. Foresight Energy LP, et al.*, WARN Act litigation brought on behalf of a class of former coal miners. Mr. Wise secured the first reported decision, a significant legal victory, regarding the WARN Act's "natural disaster" exception. 2016 WL 3812376 (Opinion entered July 12, 2016). After the defendants' motion to dismiss was denied, the parties reached a class-wide settlement of $550,000 for a class of 75 employees.

*Volz v. Tricorp management Company, et al.*, a FLSA collective in class action where Mr. Wise was appointed Class Counsel. The parties reached a $350,000 settlement for bartenders, servers, hosts, and other tipped employees of the largest T.G.I. Friday's franchisee in the Midwest.

*Morris v. Imperial Towers Condominium Assn.*, Biometric Information Privacy Act ("BIPA") class action settlement preliminarily approved naming Brandon Wise as Class Counsel. The $120,000 settlement for 60 class members is one of the highest BIPA class settlements per class member in the country.

Brandon currently serves as class or putative class counsel in other matters, as well.

**Paul Lesko** joined PWCK in August of 2016, co-founding the St. Louis office of the firm with Brandon Wise. His practice consists of representing individuals, startups, and small companies that have been harmed by larger corporations. With his biotech background, Paul focuses on prosecuting complex technological cases, including patent and class actions. Paul has specific experience litigating GMO crop cases as well as cases focusing on pesticide and herbicide technologies.

**Joseph Peiffer** is the managing member of PWCK. His practices consist of representing individuals and institutions that have been harmed by investment banks and brokerage firms, prosecuting ERISA class actions, and representing victims of labor trafficking and those who have suffered catastrophic injury. He has co-authored a

treatise Litigating Business and Commercial Tort Cases, which is published by Thompson West.

Joe has also taught and lectured extensively. He co-created and taught a class entitled Storytelling and Advocacy at Loyola Law School. Also, at Loyola Law School, he has taught a course entitled "The Basics of Arbitration" and he also serves as an adjunct professor teaching Trial Advocacy. He has guest lectured at Tulane Law School in its Securities Regulations class and Syracuse Law School on securities arbitration. He has spoken at many national conventions on a variety of topics including prosecuting large, multi-client claims, broker's deficient advice to retire and FINRA arbitration.

Joe has represented hundreds of individual retirees against their brokers in FINRA arbitration. The highlights of this practice include representing 32 Exxon retirees in a 90-day FINRA arbitration against Securities America that resulted in a $22 million verdict — one of the largest ever awarded by a FINRA arbitration panel. He has also represented hundreds of Xerox and Kodak retirees against their broker resulting from the broker's fraudulent advice to retire and subsequent unsuitable investments. He has represented hundreds of families in cases involving private placements and Ponzi schemes.

His financial services fraud practice also includes representing hospitals and municipalities around the country in cases involving their issuance of auction rate securities. He also serves as co-lead counsel on several ERISA class actions against large financial services firms alleging that they did not prudently invest retirement money and had conflicts of interest. He also is on the plaintiffs' steering committee in a nationwide antitrust class action involving the illegal tying of cable set- top boxes to the provision of premium cable services. Joe also currently represents hundreds of clients in cases involving serious injuries sustained by pharmaceutical products.

Finally, he represents victims of human trafficking and labor exploitation. In one such case, the plaintiffs have alleged that the defendants have failed to pay overtime, improperly deducted for employee housing, and held the plaintiffs passports while in the United States. He has travelled extensively to the Philippines for this case and another one involving a rig explosion where two of his clients working on a rig owned by Black Elk exploded.

Joe was one of three Louisiana lawyers ranked by Chambers USA for securities litigation in 2011. He has been named a 2013 Rising Star by his peers in the Class Action Administration organization. He has been quoted by USA Today, Wall Street Journal, the Associated Press, New York Times, New York Daily News, The Los Angeles Times, Business Week, Investment News, and many other publications. Mr. Peiffer has also appeared on CNN. He was named as one of the fifty Leaders in Law by New Orleans City Business Magazine.

He has also successfully risen into the leadership of several national bar associations. He twice served as the chairman of the Business Torts Section of the American Association for Justice. He currently serves as President of PIABA – a nationwide bar association of lawyers that represent individuals and institutions in arbitrations to recover money lost by investment banks and brokerage firms.

Joe graduated from Tulane School of Law, cum laude, in 1999. While at Tulane, he served on the Tulane Law Review and was involved with the Tulane Legal Assistance Program. Prior to attending Tulane, he graduated from Bowling Green State University in 1996 with a degree in communications.

**Adam Wolf** has developed a national reputation as a leading appellate, complex litigation, and civil rights litigator. He successfully argued a case in the United States Supreme Court, *Safford Unified School District No. 1 v. Redding*, 557 U.S. 364 (2009), that defined the scope of the Fourth Amendment regarding strip searches in public schools. The Court's opinion in *Safford* marked the first time in forty years that the Supreme Court ruled in favor of a student who claimed that her school violated her constitutional rights. For his efforts in this case, Mr. Wolf was named Attorney of the Year in California by California Lawyer Magazine.

Mr. Wolf has argued in numerous federal and state courts of appeals, in addition to the United States Supreme Court. He has represented groups and individuals whose constitutional rights have been violated, organizations who seek to vindicate their rights, and governmental entities who were harmed by corporate misconduct.

Mr. Wolf has lectured around the country regarding constitutional law and civil rights. He has been quoted in hundreds of domestic and international newspapers, including the New York Times, Washington Post, Los Angeles Times, USA Today, and Wall Street Journal. Additionally, Mr. Wolf has appeared on numerous television and radio programs, including Good Morning America, CBS Evening News, ABC World News, NBC Nightly News, CNN Headline News, National Public Radio, and the BBC.

Mr. Wolf has been appointed to leadership positions in numerous class actions and mass actions throughout the country.

**Daniel Carr** represents a diverse client base in a variety of commercial disputes, complex litigation, and arbitration. Daniel handles numerous state and federal lawsuits for individuals and businesses, and he currently represents investors, and municipalities in FINRA arbitration proceedings. Together with Joe Peiffer, Daniel also serves as co-counsel in several ERISA and antitrust class action lawsuits and represents individuals in litigation involving pharmaceutical products, labor exploitation, fraudulent investments, and wrongful death.

4

Daniel is a member of several nationwide bar associations, including PIABA (Public Investors Arbitration Bar Association), and he previously served on the board of directors of the Business Torts Section of the American Association for Justice.

Daniel received his law degree from Tulane School of Law, summa cum laude, in 2006. While at Tulane, he was elected Senior Articles Editor for the Tulane Law Review, and he worked as a fellow in the Legal Analysis Program. Following law school, Daniel was privileged to serve as a law clerk to Judge Jacques L. Wiener, Jr., on the United States Court of Appeals for the Fifth Circuit.

**Jason Kane** is a securities attorney practicing out of the firm's Upstate New York office. He has extensive experience representing investors in Financial Industry Regulatory Authority arbitrations and New York State Courts.

Jason graduated from the State University of New York at Geneseo in 2004 having earned his B.A. in Economics. Thereafter, Jason attended the Syracuse University College of Law, and received his Juris Doctorate, Cum Laude, in 2007.

While attending the Syracuse University College of Law, Jason served as a form and accuracy editor for the Syracuse Journal of International Law and Commerce. He also gained valuable experience as a student law clerk for Magistrate Judge George H. Lowe and served as a volunteer at the United States Attorney's Office in the Northern District of New York where he assisted the Assistant United States Attorneys prosecute their cases.

Jason has represented hundreds of investors in Upstate New York and around the country in some of the highest profile securities cases originating out of Upstate New York. He has recovered millions of dollars in FINRA arbitration and mediation while representing individuals against their former brokers and brokerage firms. He often assists his victimized clients through the regulatory investigations that result from the large scale scams perpetrated by their unscrupulous brokers.

### REPRESENTATIVE CASES

PWCK attorneys were appointed class counsel or serve as counsel in numerous class and collective actions, including:

*Whitley, et al. v. J.P. Morgan Chase & Co., et al.,* a class action lawsuit on behalf of retirement investors against J.P. Morgan Chase & Co. and various other J.P. Morgan entities over the sale and administration of the JP Morgan Stable Value Fund. Received preliminary approval for a class wide settlement of $75 million.

5

*Volz, et al. v. Provider Plus, Inc., et al.*, a Fair Labor Standards Act ("FLSA") collective action involving 45 collective action members. The confidential settlement agreement was approved by Judge Mummert.

*Nevarez v. Forty Niners Football Company*, a certified class action, on behalf of nearly 5,000 class members with mobility disabilities who were denied equal access to Levi's Stadium in violation of the Americans with Disabilities Act.

*Baricuarto, et al. v. Industrial Personnell and Management Services, Inc. et al.*, a human trafficking case that required extensive travel and litigation in the Philippines, and resulted in a multi-million dollar settlement.

*In re Pacific Fertility Center Litigation*, a putative class action on behalf of nearly 1,000 people whose embryos were compromised in a freezer tank at a fertility center.

*Amador v. California Culinary Academy*, representing a certified class of former students of for-profit school California Culinary Academy regarding class members' student loans.

*Bilewicz v. FMR LLC*, a case brought on behalf of current and former employees of Fidelity Investments, alleging that Fidelity violated ERISA by offering exclusively high-fee Fidelity mutual fund products in its retirement plan and by repeatedly adding funds to the plan with little or no track record. Plaintiffs further alleged that the Fidelity plan's fees are very high for a multi- billion dollar plan, and Fidelity has failed to follow sound fiduciary practices for multi-billion dollar plans. This case was successfully settled, and PWCK was approved as co-class counsel in that action.

*Carver, et al. v. Foresight Energy LP, et al.*, WARN Act litigation brought on behalf of a class of former coal miners. PWCK secured the first reported decision, a significant legal victory, regarding the WARN Act's "natural disaster" exception. 2016 WL 3812376 (Opinion entered July 12, 2016). After the defendants' motion to dismiss was denied, the parties reached a proposed class-wide settlement of $550,000 for a class of 75 employees.

*Volz v. Tricorp management Company, et al.*, a FLSA collective in class action where PRW Legal attorney was appointed class counsel. Settled for $350,000, for bartenders, servers, hosts, and other tipped employees of the largest T.G.I. Friday's franchisee in the Midwest.

*Hanson v. Berthel Fisher & Company Financial Services, Inc., et al.*, a securities class action filed on behalf of investors in a real estate investment program that raised approximately $26 million from the investing public. Claims were predicated upon the role played by Berthel Fisher, the managing broker-dealer of the program that allegedly organized and oversaw the securities offering by the Program while aware of misrepresentations and

omissions in the Program's offering documents.

*Booth et al. v. Strategic Realty Trust, Inc., et al.*, a securities class action where plaintiffs contended that throughout the offering period, the Strategic Realty Trust offering materials contained materially inaccurate and incomplete statements about the company's investment strategy, internal controls, and governance mechanisms. Plaintiffs alleged that their investments lost value as a result of defendants' acts and omissions.

*Thieriot v. Celtic Ins. Co.*, a certified class action where settlement was approved on behalf of a class of people who were overcharged by a health insurer in violation of state law.

PWCK currently serves as counsel for plaintiffs in numerous other class and mass actions, including:

*In re: FedLoan Student Loan Servicing Litigation*, 2:18-md-02883 (E.D. Penn.) consolidated multi-district litigation involving one of the nation's largest student loan servicers. Attorney Brandon Wise was appointed to the Plaintiffs' Executive Committee.

*In re: Dicamba Herbicides Litigation*, 1:18-md-02820-SNLJ (E.D. Mo), consolidated multi-district litigation involving the alleged unlawful release of a genetically modified seed and herbicide system.

*Albers, et al. v. Delloite & Touche LLP, et al.*, a mass securities action where PWCK represents over 100 investors with claims exceeding $100 million in action alleging violations of state securities laws.

*Yao-Yi Liu et al. v. Wilmington Trust Company*, a class action lawsuit on behalf of investors of a fraudulent scheme against Wilmington Trust alleging that Wilmington Trust breached its duties as an escrow agent and aided the perpetrators of the scheme.

*In re Platinum and Palladium Antitrust Litigation*, a case involving claims against BASF Metals, Goldman Sachs, HSBC, and Standard Bank. Plaintiffs allege that Defendants were involved in an unlawful price-setting process of platinum and palladium in violation of the Sherman Act.

*Fouts v. Bank of Nova Scotia, New York Agency et al.*, a class action filed on behalf of holders of debt with interest rates linked to the US Treasuries auction rates, alleging violations of the federal antitrust and commodities laws arising from manipulation of the prices of Treasury securities and related financial instruments through collusion by the primary dealers of U.S. Treasury Department securities.

*In re Fidelity ERISA Float Litigation*, a case involving claims brought by participants in various ERISA plans administered by Fidelity, on behalf of those plans, alleging that Fidelity violated ERISA by improperly using "float" income received as interest on plan assets to pay itself fees and failing to crediting the amount of that float income to the plans or their participants.

*American Chemicals & Equipment Inc. 401(K) Retirement Plan v. Principal Management Corporation, et al.*, a case involving claims brought by ACE 401(k) Plan, on behalf of the shareholders of six mutual funds, against the investment advisors for those funds. Plaintiff alleges that the defendants breached their statutory fiduciary duty under Section 36(b) of the Investment Company Act of 1940 ("ICA"), 15 U.S.C. § 80a-35(b), by charging unfair and excessive fees for their advisory services and retaining excess profits derived from economies of scale.

*Jennifer Roth v. Life Time Fitness, Inc.*, a class action lawsuit filed on behalf of fitness instructors seeking unpaid wages for work that was required by Defendants. Plaintiff alleges that fitness instructors were not compensated for the work they performed before and after fitness classes.

*Carol Prock v. Thompson National Properties, LLC, et al.*, a securities class action filed on behalf of investors in the TNP 6700 Santa Monica Boulevard, a real estate investment program that raised approximately $17 million from the investing public. Claims are predicated upon alleged material misrepresentations and omissions in the program's offering documents by its sponsor and officers and directors of the sponsor.

*In re Dental Supplies Antitrust Litigation*, a class action lawsuit filed on behalf of dental practices, orthodontic practices, and dental laboratories alleging that the country's three largest distributors of dental supplies and equipment agreed not to compete on price and caused injury to plaintiffs in the form of artificially inflated prices.

*Matthew Fero et al. v. Excellus Health Plan Inc.*, a class action lawsuit filed on behalf of plaintiffs whose personal information was compromised as a result of a data breach that is alleged to have gone undetected for a 600-day period.

IN THE TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY
STATE OF ILLINOIS

CASSANDRA BOYLE, INDIVIDUALLY AND            )
ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,  )
                                             )
    *Plaintiff*,                             )
                                             )
SKYLA RICHARDSON,                            )
                                             )
    *Putative Plaintiff*,                    )
                                             )        Case No.: 19-L-0188
v.                                           )
                                             )        Judge: Christopher Kolker
HARBOR FREIGHT TOOLS USA, INC.,              )
                                             )        **JURY TRIAL DEMANDED**
    *Defendant*.                             )

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT AND ADD ADDITIONAL PLAINTIFF

Plaintiff Cassandra Boyle, and putative Plaintiff Skyla Richardson, by and through their Counsel, and request leave to Amend Complaint and add and Additional Plaintiff, and state as follows in support thereof:

1.    This matter was filed on March 5, 2019.

2.    In the initial Class Action Complaint, Plaintiff Cassandra Boyle alleges violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 et. seq. ("BIPA") arising from Defendant's use of biometric timekeeping devices. *See generally*, Compl.

3.    Plaintiff seeks leave to amend very early in this matter, including before any responsive pleading has been filed by Defendant.

4.    Putative Plaintiff Richardson's allegations are very similar to the allegations of Plaintiff Boyle – Defendant violated BIPA by imposing biometric timekeeping devices without complying with the strictures legislatively imposed on employers and other private entities by BIPA.

5.    735 ILCS 5/2-616(a) and (c) state:

(a) At any time before final judgment amendments may be allowed on just and reasonable terms, introducing any party who ought to have been joined as plaintiff or

defendant, dismissing any party, changing the cause of action or defense or adding
new causes of action or defenses, and in any matter, either of form or substance, in
any process, pleading, bill of particulars or proceedings, which may enable the plaintiff
to sustain the claim for which it was intended to be brought or the defendant to make
a defense or assert a cross claim.

(c) A pleading may be amended at any time, before or after judgment, to conform the
pleadings to the proofs, upon terms as to costs and continuance that may be just.

6.      "As a general rule, leave to amend is freely granted." *Sheffler v Comm. Edison Co.*,

399 Ill. App. 3d 51, 59 (1st Dist. 2010).   In light of the liberal policy encouraging leave to amend, the

failure to allow an amendment can result in a reversible error. *See, Loyola Acad. v. S & S Roof*

*Maint., Inc.*, 146 Ill. 2d 263, 276, 586 N.E.2d 1211, 1217 (1992)("trial court abused its discretion when

it denied plaintiff's motion for leave to file an amended" pleading); *Suburban Auto Rebuilders, Inc.*

*v. Associated Tile Dealers Warehouse, Inc.*, 388 Ill. App. 3d 81, 96, 902 N.E.2d 1178, 1192 (1st Dist.

2009)("Thus, we find that the trial court abused its discretion when it denied plaintiff's motion for

leave to file an amended complaint.").

7.      "Any doubt as to whether pleadings should be amended should be resolved in favor

of an amendment." *Am. Nat. Bank & Tr. Co. of Chicago v. Dozoryst*, 256 Ill. App. 3d 674, 678–

79, 628 N.E.2d 1072, 1075–76 (1st Dist. 1993)(reversing for not allowing amendment at trial); *Deming*

*v. Montgomery*, 180 Ill. App. 3d 527, 532, 536 N.E.2d 150, 153 (5th Dist. 1989)(reversing trial court's

denial of request to amend at trial to add a new theory of recovery).

8.      In *Loyola Acad. v. S & S Roof Maint., Inc.*, 146 Ill. 2d 263, 276, 586 N.E.2d 1211,

1217 (1992), the Supreme Court found that the trial court abused its discretion in not allowing an

amendment that was requested two months after an order granting summary judgment and when the

opposing party was allowed to amend. The Court noted that: "we find that the denial of the motion

to amend was prejudicial error as a result of a manifest abuse of discretion. To hold otherwise would

mean a construction of section 2–616 leading to an absurd, inconvenient and unjust consequence.

More importantly, we find that the amendment was material, and its materiality is apparent."

9.    In *Siebert v. Cont'l Oil Co., Inc.*, 161 Ill. App. 3d 891, 895–96, 515 N.E.2d728, 731

(1st Dist. 1987), the Court was reversed for not allowing an amendment after summary judgment.

There, the plaintiff initially alleged a theory of negligence under a design theory. However, the

amendment sought to add a new negligence theory as an owner and operator. The Court reversed the

trial court's decision and found that the denial of the motion for leave to amend was improper.

10.    "Courts consider a number of factors in determining whether leave should be granted,

such as "(1) whether the amendment cures a defect in the pleadings; (2) whether the other party is

prejudiced or surprised by the proposed amendment; (3) whether the proposed amendment is timely;

and (4) whether there were previous opportunities to amend the pleadings." See, *Tomm's Redemption,

Inc. v. Hamer*, 2014 IL App (1st) 131005, ¶ 13.

11.    Here, each of these factors is neutral or weighs favor of granting leave to amend.

12.    As to whether the amendment cures a defect in the pleading, this factor is neutral as

no defect to the pleading has been raised on the record.

13.    As to the second factor, it cannot be said that Defendant is surprised or prejudiced by

allowing the requested amendment. Plaintiffs' counsel has informed Defendant's counsel of the

forthcoming amendment and suggested that Defendant not answer or respond to the original Class

Action Complaint to preserve resources.

14.    The proposed amendment is more than timely, weighing in favor of allowing the

proposed amendment.

15.    Finally, due to the very early stage of litigation, there has been no previous

opportunities for amendment.

16.    A proposed First Amended Class Action Complaint is attached hereto as Exhibit A.

Wherefore, Plaintiffs request that they be granted leave to file the attached Amended

Complaint *instanter*.

Respectfully submitted,

Dated: May 7, 2019

By: /s/ Brandon M. Wise

Brandon M. Wise – IL Bar # 6319580
Paul A. Lesko – IL Bar # 6288806
PEIFFER WOLF CARR & KANE, APLC
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
Ph: 314-833-4825
Email: bwise@pwcklegal.com
Email: plesko@pwcklegal.com

COUNSEL FOR THE PLAINTIFFS AND THE PUTATIVE CLASS

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2019, I filed the foregoing document with the clerk of the Court using the Illinois E-Filing System, which should further distribute a true and accurate copy of the foregoing to all counsel of record. Additionally, a true and accurate copy of the foregoing will be served on the following via email:

Joel C. Griswold – jcgriswold@bakerlaw.com
Bonnie Keane DelGobbo – bdelgobbo@bakerlaw.com
Baker Hostetler
191 N Wacker Dr., Suite 3100
Chicago, IL 60606

/s/ Brandon M. Wise

EXHIBIT A

## IN THE TWENTIETH JUDICIAL CIRCUIT
## ST. CLAIR COUNTY
## STATE OF ILLINOIS

CASSANDRA BOYLE and          )
SKYLA RICHARDSON, INDIVIDUALLY AND    )
ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,   )
                           )
       *Plaintiffs,*            )
                           )      Case No.: 19-L-0188
v.                              )
                           )      Judge: Christopher Kolker
HARBOR FREIGHT TOOLS USA, INC.,      )
                           )      **JURY TRIAL DEMANDED**
                           )
       *Defendant.*            )

### FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Cassandra Boyle and Skyla Richardson (hereinafter "Plaintiffs"), bring this Class Action Complaint individually and on behalf of all others similarly situated against Defendant Harbor Freight Tools USA, Inc. (hereinafter "Harbor Freight" or "Defendant"), to stop Defendant's unlawful collection, use, and storage, of Plaintiffs' and the proposed Class's sensitive, private, and personal biometric data. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by their attorneys. Further, Plaintiffs allege as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Cassandra Boyle is an individual citizen of the State of Illinois. While working for Harbor Freight, until on or about 2016, Plaintiff was a resident of Illinois.

2.     Plaintiff Skyla Richardson is an individual citizen of the State of Illinois. While working for Harbor Freight, until on or about June 2017, Plaintiff was a resident of Illinois.

3.     Defendant Harbor Freight Tools USA, Inc. is a Delaware corporation and has at least one place of business in Illinois.

4.    Defendant may be served through its registered agent, Corporate Creations Network, 350 S Northwest Highway #300, Park Ridge, Illinois 60068.

5.    Jurisdiction is proper in this Court as Defendant operates its business in Illinois and the unlawful acts complained of herein occurred in Illinois.

6.    Venue is proper in this court pursuant to 735 ILCS 5/2-101 as, upon information and belief, Defendant does business in this county, making Defendant a resident of this county for venue purposes.

## INTRODUCTION

7.    Plaintiffs worked for Defendant in Illinois.

8.    Each time Plaintiffs began and ended their workday, they were required to "clock-in" and "clock-out" using a timeclock that operated, at least in part, by scanning Plaintiffs' fingerprint.

9.    As employees, Plaintiffs were required to scan their fingerprint multiple times so Defendant could create, collect, capture, construct, store, use, and/or obtain a biometric template for Plaintiffs.

10.    Defendant subsequently stored Plaintiffs' biometric data in a biometric database.

11.    Defendant then used Plaintiffs' biometrics as an identification method to track their time.

12.    While most establishments and employers use conventional methods for tracking time worked (such as ID badge swipes or punch clocks), Defendant, upon information and belief, mandated and required that employees have their fingerprints scanned by a biometric timekeeping device.

13.    Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – fingerprint biometrics are unique, permanent biometric identifiers associated with each employee.

14.     This exposes Defendant's employees, including Plaintiffs, to serious and irreversible risks.

15.     For example, if a biometric database is hacked, breached, or otherwise exposed – such as in the recent Equifax data breach – employees have **_no_** means by which to prevent identity theft, unauthorized tracking, and other improper or unlawful use of this information.

16.     In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), available at www.opm.gov/cybersecurity/cybersecurity-incidents.

17.     An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), available at https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-inindiahas-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259f138.

18.     In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), available at http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-haveaccessto-billion-aadhaar-details/523361.html.

19.     The Illinois Biometric Information Privacy Act (hereinafter "BIPA" or the "Act") expressly obligates Defendant to obtain an executed, written release from an individual, as a condition of employment, in order to capture, collect, and store an individual's biometric identifiers or biometric

information, especially a fingerprint or hand geometry scan, and biometric information derived from it.

20.    BIPA further obligates Defendant to inform its employees in writing that a biometric identifier or biometric information is being collected or captured; to tell its employees in writing for how long it will store their biometric data or information and any purposes for which biometric information is being captured, collected, and used; and to make available a written policy disclosing when it will permanently destroy such information.

21.    BIPA makes all of these requirements a *precondition* to the collection or recording of fingerprints, hand geometry scans, or other associated biometric information – under the Act, no biometric identifiers or biometric information may be captured, collected, purchased, or otherwise obtained if these pre-capture, pre-collection, pre-storage, or pre-obtainment requirements are not met.

22.    The State of Illinois takes the biometric rights and biometric data seriously. There is no realistic way, absent surgery, to reassign someone's biometric data. A person can obtain a new social security number, but not a new hand, which makes the protection of, and control over, biometric identifiers and biometric information particularly important – particularly given the increasing use of biometric information or identifiers in the stream of commerce and financial transactions and the ever-increasing rate of corporate data breaches.

23.    The Illinois Supreme Court has affirmatively stated that BIPA biometric rights must be "**properly honored and protected**." *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 36 (emphasis added).

### DEFENDANT'S BIOMETRIC SCANNING OF EMPLOYEES

24.    At relevant times, Defendant has taken the rather invasive and coercive step of requiring employees to be fingerprint scanned, and then using biometric information captured from those fingerprint scans, and data derived therefrom, to identify the employee and track employee work

time.

25.    After an employee's fingerprint scans are captured, collected, and/or recorded by Defendant, employees are subsequently required to scan their fingerprint into one of Defendant's biometric time clocks when they clock in or out at work.

26.    Defendant captured, collected, stored, and/or otherwise obtained the employee's biometrics in order to identify the employee who is clocking in or out.

27.    Moreover, Defendant caused these biometrics to be associated with employees, along with other employee personal and work information.

28.    Defendant has a practice of using biometric time clocks to track its employees, albeit without regard to Illinois' requirements under BIPA.

29.    As part of the employee time-clocking process, Defendant caused biometrics from employee fingerprint scans to be recorded, collected, captured, and stored at relevant times.

30.    Defendant has not, on information and belief, properly informed employees in writing that a biometric identifier or biometric information is being captured, obtained, collected or stored; informed employees in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; obtained employees' proper written consent to the capture, collection, obtainment or storage of their biometric identifier and biometric information derived from it; or obtained employees' executed written release as a condition of employment.

31.    Defendant further required Plaintiffs to scan Plaintiffs' fingerprint in order to use the biometric system, so that the timekeeping system captured, collected, stored, and/or otherwise obtained Plaintiffs' fingerprint scan, matched Plaintiffs' fingerprint scan biometrics, and associated Plaintiffs' biometrics with Plaintiffs' identity.

32.     Defendant did not at any time, on information and belief: inform Plaintiffs in writing (or otherwise) that a biometric identifier and biometric information was being obtained, captured, collected, and/or stored, or of the specific purposes and length of term for which a biometric identifier or biometric information was being collected, captured, stored, and/or used; obtain, or attempt to obtain, Plaintiffs' executed written release to have Plaintiffs' biometrics captured, collected, stored, or recorded as a condition of employment – Plaintiffs did not provide consent required by BIPA to the capture, collection, storage, obtainment, and/or use of Plaintiffs' fingerprint or associated biometrics. Nor did Plaintiffs know or fully understand that Defendant was collecting, capturing, and/or storing biometrics when Plaintiffs were scanning Plaintiffs' fingerprint; nor did Plaintiffs know or could Plaintiffs know all of the uses or purposes for which Plaintiffs' biometrics were taken.

33.     Upon information and belief, Defendant does not have, and therefore has not publicly disclosed its retention schedule and guidelines for permanently destroying employee biometrics, if they exist.

34.     Defendant, on information and belief, has no written policy, made available to the public, that discloses its retention schedule and/or guidelines for retaining and then permanently destroying biometric identifiers and information.

35.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA highlights why conduct such as Defendant's – where individuals are aware that they are providing a biometric but not aware of to whom or for what purposes they are doing so – is dangerous.

36.     That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers or information such as a fingerprint scan, and/or data derived therefrom, who exactly is collecting their biometric data, where it will be transmitted and for what purposes, and for how long.

37.    Thus, BIPA is the Illinois Legislatures expression that Illinois citizens have biometric rights, as created by BIPA.

38.    Defendant disregarded these obligations and instead unlawfully collected, stored, and used employees' biometric identifiers and information, without ever receiving the individual's informed written consent as required by BIPA.

39.    Defendant's employees are not told what might happen to their biometric data if and/or when their work locations are sold, taken over by different management, or, worse, if and when Defendant's entire enterprises fold.

40.    Because Defendant neither published a BIPA-mandated data retention policy nor disclosed the purposes for their collection of biometric data, Defendant's employees have no idea whether Defendant sells, discloses, re-discloses, or otherwise disseminates his or her biometric data.

41.    Nor are Plaintiffs and the putative Class told what might happen to his or her biometric data in the event of a buyout, merger, or a bankruptcy.

42.    By and through the actions detailed above, Defendant has not only disregard the Class' rights, but it has also violated BIPA.

43.    Defendant's above-described use of biometrics benefits only Defendant. There is no corresponding benefit to employees: Defendant has required or coerced employees to comply in order to receive a paycheck, after they have been committed to the job.

44.    Plaintiffs and the putative Class are aggrieved by Defendant's failure to destroy their biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of employees' last interactions with the company.

### ILLINOIS'S STRONG STANCE ON PROTECTION OF BIOMETRIC INFORMATION

45.    BIPA provides valuable rights, protections, and benefits to employees in Illinois.

46.    For example, BIPA's requirements ensure that the environment for taking of biometrics is not forced or coerced; that individuals are freely advised that, by scanning one's fingerprint, the employer is capturing, extracting, creating, and recording fingerprint biometrics; that individuals can keep tabs on their biometric roadmaps *(e.g.,* who has their biometrics, for how long, and how it is being used), including after one's employment ceases, or after the employer stops storing the employee's biometrics if at all, when employer-employee files or policies may not be freely accessible; that individuals can evaluate the potential consequences of providing their biometrics; that companies must give individuals the right, and opportunity, to freely consent (or decline consent) before taking their biometrics; that, if the disclosure does not say so, the employee's biometrics will not be used for any other purpose except for employee time and attendance and will not be used to run a criminal background check; and that their biometrics are being handled with a measure of security. The BIPA-required environment for the taking of biometrics provides legislatively-imposed peace for biometric subjects.

47.    To this end, in passing the Biometric Information Privacy Act (hereinafter "the Act"), the Illinois General Assembly found:

(a) The use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings.

(b) Major national corporations have selected the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias.

(c) Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

(d) An overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information.

(e) Despite limited State law regulating the collection, use, safeguarding, and storage of biometrics, many members of the public are deterred from partaking in biometric identifier-facilitated transactions.

(f) The full ramifications of biometric technology are not fully known.

(g) The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

See, 740 ILCS 14/5, Legislative findings; intent.

48.     The law is specifically designed to require a company that collects biometrics to jump through several hoops, *before collection,* aimed, in part, at educating and protecting the person whose biometrics it is taking for its own use, and requiring signed, written consent attesting that the individual has been properly informed and has freely consented to biometrics collection.

49.     The Act defines "Biometric identifier" as:

a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry. Biometric identifiers do not include writing samples, written signatures, photographs, human biological samples used for valid scientific testing or screening, demographic data, tattoo descriptions, or physical descriptions such as height, weight, hair color, or eye color. Biometric identifiers do not include donated organs, tissues, or parts as defined in the Illinois Anatomical Gift Act or blood or serum stored on behalf of recipients or potential recipients of living or cadaveric transplants and obtained or stored by a federally designated organ procurement agency. Biometric identifiers do not include biological materials regulated under the Genetic Information Privacy Act. Biometric identifiers do not include information captured from a patient in a health care setting or information collected, used, or stored for health care treatment, payment, or operations under the federal Health Insurance Portability and Accountability Act of 1996. Biometric identifiers do not include an X-ray, roentgen process, computed tomography, MRI, PET scan, mammography, or other image or film of the human anatomy used to diagnose, prognose, or treat an illness or other medical condition or to further validate scientific testing or screening.

See, 740 ILCS 14/10.

50.     The Act defines "Biometric information" as:

any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers.

See, 740 ILCS 14/10.

51.    The Act defines "Confidential and sensitive information" as:

personal information that can be used to uniquely identify an individual or an individual's account or property. Examples of confidential and sensitive information include, but are not limited to, a genetic marker, genetic testing information, a unique identifier number to locate an account or property, an account number, a PIN number, a pass code, a driver's license number, or a social security number.

See, 740 ILCS 14/10.

52.    The Act defines "Private entity" as:

any individual, partnership, corporation, limited liability company, association, or other group, however organized. A private entity does not include a State or local government agency. A private entity does not include any court of Illinois, a clerk of the court, or a judge or justice thereof.

See, 740 ILCS 14/10.

53.    The Act defines "Written release" as:

informed written consent or, in the context of employment, a release executed by an employee as a condition of employment

See, 740 ILCS 14/10.

54.    The Act requires:

A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

740 ILCS 14/15(a).

55.    Additionally, the Act provides:

No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(b).

56.     Further, the Act provides:

No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information.

740 ILCS 14/15(c).

57.     The Act also provides:

No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:

(1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure;

(2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or the biometric information or the subject's legally authorized representative;

(3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or

(4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

740 ILCS 14/15(d).

58.     Furthermore, the Act provides:

A private entity in possession of a biometric identifier or biometric information shall:

(1) store, transmit, and protect from disclosure all biometric identifiers and biometric information using the reasonable standard of care within the private entity's industry; and

> (2) store, transmit, and protect from disclosure all biometric identifiers and
> biometric information in a manner that is the same as or more protective than the
> manner in which the private entity stores, transmits, and protects other
> confidential and sensitive information.

740 ILCS 14/15(e).

59.    BIPA provides statutory damages if an employer takes an employee's biometrics and

invades an employee's rights by circumventing BIPA's preconditions and requirements.

60.    The Act explicitly provides a private right of action for violations of the Act, and

provides that a prevailing party "may recover for each violation:"

> (1) against a private entity that negligently violates a provision of this Act,
> liquidated damages of $1,000 or actual damages, whichever is greater;
>
> (2) against a private entity that intentionally or recklessly violates a provision of
> this Act, liquidated damages of $5,000 or actual damages, whichever is greater;
>
> (3) reasonable attorneys' fees and costs, including expert witness fees and other
> litigation expenses; and
>
> (4) other relief, including an injunction, as the State or federal court may deem
> appropriate.

740 ILCS 14/20.

61.    In enacting BIPA, the Illinois General Assembly explicitly singled out and bound

employers to BIPA's requirements. 740 ILCS § 14/10 (defining "Written release" in the context of

employment); 740 ILCS § 14/15(b)(3).

62.    In fact, BIPA requires express written consent not only in order to capture or collect

biometrics in the first place, but in the context of employment, the requirement goes a step further:

the employer must obtain "informed written consent," in the form of "a release executed by an

employee," and further, the release must be executed "as a condition of employment." *Id.* These

formalized protections enable employees to freely consent to the taking of their biometrics.

63.    Defendant violated these clear protections of the Act; Defendant violated, and upon

information and belief, continue to violate its employees' biometric rights.

## CLASS ALLEGATIONS

64.    Plaintiffs bring this action on behalf of themselves and pursuant to 735 ILCS 5/2-801 on behalf of a class (hereinafter the "Class") defined as follows:

> All persons who were enrolled in the biometric timekeeping system and subsequently used a biometric timeclock while employed/working for Defendant from five years preceding the filing of this action to the date a class notice is mailed in this action.

Excluded from the class are Defendant's officers and directors, Plaintiffs' counsel, and any member of the judiciary presiding over this action.

65.    **Numerosity:** The exact number of class members is unknown and is not available to Plaintiffs at this time, but upon information and belief, there are in excess of five hundred (500) potential class members, and individual joinder in this case is impracticable. Class members can easily be identified through Defendant's records and allowing this matter to proceed on a class basis will prevent any retaliation by Defendant against current employees who are currently having their BIPA rights violated.

66.    **Common Questions:** There are several questions of law and fact common to the claim of Plaintiffs and the Class members, and those questions predominate over any questions that may affect individual Class members. Common questions include, but are not limited to, the following:

a.    whether Defendant has a practice of capturing or collecting employees' biometrics;

b.    whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of the individual's last interaction with Defendant, whichever occurs first;

c.    whether Defendant obtained an executed written release from fingerprint scanned employees before capturing, collecting, or otherwise obtaining employee biometrics;

d.    whether Defendant obtained an executed written release from fingerprint scanned employees, as a condition of employment, before capturing, collecting, converting, sharing, storing or using employee biometrics;

e.   whether Defendant provided a writing disclosing to employees the specific purposes for which the biometrics are being collected, stored, and used;

f.   whether Defendant provided a writing disclosing to fingerprint scanned employees the length of time for which the biometrics are being collected, stored, and used;

g.   whether Defendant's conduct violates BIPA;

h.   whether Defendant's conduct was negligent, reckless, or willful;

i.   whether Plaintiffs and Class members are entitled to damages, and what is the proper measure of damages;

j.   whether Plaintiffs and Class members are entitled to injunctive relief.

67.    **Adequacy of Representation:** Plaintiffs will fairly and adequately represent and protect the interest of the class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs has no interests antagonistic to those of the class, and Defendant has no defenses unique to Plaintiffs.

68.    **Appropriateness:** Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Further, it would be virtually impossible for the individual members of the Class to obtain effective relief because of the fear and likelihood of retaliation by Defendant against current employees bringing a civil action as an individual. Even if Class members were able or willing to pursue such individual litigation, a class action would still be preferable due to the fact that a multiplicity of individual actions would likely increase the expense and time of litigation given the complex legal and factual controversies presented in this Class Action Complaint. A class action, on the other hand, provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision before a single Court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

COUNT I – FOR DAMAGES AGAINST DEFENDANT
VIOLATION OF 740 ILCS 14/1, *ET SEQ.* – THE BIOMETRIC INFORMATION PRIVACY ACT
INDIVIDUALLY AND ON BEHALF OF THE CLASS

69.     Plaintiffs, individually and on behalf of all others similarly situated, repeat, re-allege, and incorporate all preceding paragraphs as if fully set forth herein.

70.     BIPA is a remedial statute designed to protect employees, by requiring consent and disclosures associated with the handling of biometrics, particularly in the context of biometric technology. 740 ILCS 14/5(g), 14/10, and 14/15(b)(3).

71.     The Illinois General Assembly's recognition of the importance of the public policy and benefits underpinning BIPA's enactment, and the regulation of biometrics collection, is detailed in the text of the statute itself.

72.     Further, the Illinois Supreme Court, in a unanimous decision made clear that "Compliance should not be difficult." *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 37 (Jan. 25, 2019).

73.     Additionally, the Illinois Supreme Court has made clear that the Illinois Legislature intended to "subject[] private entities who fail to follow the statute's requirements to **substantial potential liability**, including liquidated damages, injunctions, attorney fees, and litigation expenses **'for each violation' of the law** (*id.* § 20) whether or not actual damages, beyond violation of the law's provisions, can be shown. *Id.* at ¶ 36 (emphasis added).

74.     "It is clear that the legislature intended for this provision to have substantial force." *Id.* at ¶ 37.

75.     Defendant has been and continues to be a "private entity."

76.     Defendant has been and continues to be a "private entity" in possession of Plaintiffs' and other employees' biometrics, and it collected, captured, or otherwise obtained their biometric identifiers and biometric information within the meaning of the Act.

77.    Plaintiffs and the putative Class have suffered an injury in fact based on Defendant's violations of their legal rights.

78.    Plaintiffs have never been informed of the specific limited purposes or length of time for which Defendant collected, stored, or used their biometrics.

79.    Plaintiffs have never been informed of any biometric data retention policy developed by Defendant, nor have they ever been informed of whether Defendant will ever permanently delete their biometrics.

80.    Plaintiffs have never been provided with nor ever signed a written release allowing Defendant to collect, capture, store, or otherwise obtain their fingerprint print, hand geometry, or other biometrics.

81.    Plaintiffs have continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's violations of BIPA alleged herein.

82.    BIPA protects employees like Plaintiffs and the putative Class from this precise conduct, and Defendant had no right to secure this data.

83.    Through BIPA, the Illinois legislature has created a right – a right to receive certain information prior to an employer securing their highly personal, private and proprietary biometric data – and an injury – not receiving this extremely critical information.

84.    At relevant times Defendant collected, captured, or otherwise obtained, Plaintiffs' and other employees' biometric identifiers and biometric information based on those identifiers as defined by BIPA, 740 ILCS 14/10, through the imposition of biometric fingerprint scanning time clocks.

85.    In violation of 740 ILCS 14/15(b), Defendant has collected, captured, stored, and/or otherwise obtained Plaintiffs' and other class members' biometric identifiers and biometric information, without:

    a.   informing Plaintiffs and the Class (including, where applicable, their legal authorized representatives), in writing, that the biometric identifiers or biometric information were being obtained, collected, captured, and/or stored;

    b.   informing Plaintiffs and the Class (including, where applicable, their legal authorized representatives), in writing, of the specific purpose and length of term for which the biometric identifiers or biometric information were being collected, stored, and used; and

    c.   receiving a written release executed by Plaintiffs and/or Class members and executed by Plaintiffs and/or Class members as a condition of employment.

86.    Defendant took Plaintiffs' and other class members' fingerprint scans, and knowingly caused their biometrics to be captured, collected, stored, and/or otherwise obtained without making publicly available the required policy that explains, for example, any purposes for which the biometric identifiers and information were collected, a retention schedule, and guidelines for permanently destroying biometric identifiers and information.

87.    As a result of Defendant's above-described acts and omissions, Defendant has invaded the biometric rights of Plaintiffs and the Class; it has unlawfully and coercively taken their biometrics; it has failed to provide them with information required by BIPA; it has deprived them of benefits, rights, opportunities and decisions conferred and required by the Illinois legislature via BIPA; and it illegally captured, collected, recorded, possessed, converted, and/or stored their fingerprint scans, biometrics, and property.

88.    Accordingly, Defendant has negligently violated the BIPA, and Plaintiffs and the Class have been damaged and are entitled to damages available under the BIPA, including liquidated damages of $1,000 per negligent violation, $5,000 per willful or reckless violation, or actual damages, whichever is greater. 740 ILCS 14/20(1).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class of similarly situated individuals, prays for an Order as follows:

A.      Finding this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.*, and certifying the Class as defined herein;

B.      Designating and appointing Plaintiffs as representative of the Class and Plaintiffs' undersigned counsel as Class Counsel;

C.      Entering judgment in favor of Plaintiffs and the Class and against Defendant;

D.      Awarding Plaintiffs and the Class members liquidated damages of $1,000 per negligent violation, $5,000 per willful or reckless violation, or actual damages, whichever is greater, for each violation of BIPA;

E.      Awarding Plaintiffs and the Class members reasonable attorneys' fees and costs incurred in this litigation; and

F.      Granting all such other and further relief as the Court deems just and appropriate.

## COUNT II – FOR INJUNCTIVE RELIEF AGAINST DEFENDANT
### VIOLATION OF 740 ILCS 14/1, *ET SEQ.* – THE BIOMETRIC INFORMATION PRIVACY ACT

89.     Plaintiffs, individually and on behalf of all others similarly situated, repeat, re-allege, and incorporate all preceding paragraphs as if fully set forth herein.

90.     BIPA provides for injunctive relief. 740 ILCS 14/20(4).

91.     Plaintiffs and other Class members are entitled to an order requiring Defendant to make disclosures consistent with the Act and enjoining further unlawful conduct.

92.     First, Plaintiffs seek an order requiring Defendant to publicly disclose a written policy establishing any specific purpose and length of term for which Plaintiffs and other employees' biometrics have been collected, captured, stored, obtained, and/or used, as well as guidelines for permanently destroying such biometrics when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first, as required by 740 ILCS 14/15(a).

93.    Second, Plaintiffs seek an order requiring Defendant to disclose whether Defendant has retained Plaintiffs' and other employees' biometrics in any fashion, and if, when, and how such biometrics were permanently destroyed, consistent with BIPA.

94.    Third, due to the above-described facts, and Defendant's failure to make publicly available facts demonstrating BIPA compliance as BIPA requires, Defendant should be ordered to: (i) disclose if (and if, precisely how, and to whom) it has disseminated, sold, leased, traded, or otherwise profited from Plaintiffs and other fingerprint scanned employees' biometrics, which is strictly prohibited under BIPA; and (ii) disclose the standard of care that it employed to store, transmit, and protect such biometrics, as provided under BIPA. 740 ILCS 14/15(c), (d), (e).

95.    Fourth, Defendant should be enjoined from further BIPA non-compliance and should be ordered to remedy any BIPA compliance deficiencies forthwith.

96.    Plaintiffs' and other Class members' legal interests are adverse to Defendant's legal interests. There is a substantial controversy between Plaintiffs and Class members and Defendant warranting equitable relief so that Plaintiffs and the Class may obtain the protections that BIPA entitles them to receive.

97.    Plaintiffs and the Class do not know what Defendant has done (or intends to do) with their biometrics. Absent injunctive relief, Defendant is likely to continue its BIPA non-compliance and Plaintiffs and other Class members will continue to be in the dark on the subject.

98.    For the reasons set forth above, Plaintiffs are likely to succeed on the merits of Plaintiffs' claims.

99.    BIPA establishes the importance, value, and sensitive nature of biometrics, along with the need to protect and control it; Plaintiffs are entitled to know what Defendant has done with it as set forth above, and to an affirmation and verification that it has been or will be permanently destroyed as required by 740 ILCS 14/15(a).

100.    The gravity of the harm to Plaintiffs and the Class, absent equitable relief, outweighs any harm to Defendant if such relief is granted.

101.    As a result, Plaintiffs request commensurate injunctive relief.

**WHEREFORE**, Plaintiffs, individually and on behalf of the class, prays for an Order as follows:

A.    Finding this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.*, and certifying the class defined herein;

B.    Designating and appointing Plaintiffs as representative of the class and Plaintiffs' undersigned counsel as class counsel;

C.    Entering judgment in favor of Plaintiffs and the class and against Defendant;

D.    Awarding Plaintiffs and the class members all damages available to Plaintiffs and the class available under applicable law, including statutory or liquidated damages;

E.    Providing commensurate injunctive relief for Plaintiffs and class members as set forth above;

F.    Awarding Plaintiffs and the Class members reasonable attorneys' fees and costs incurred in this litigation; and

G.    Granting all such other and further relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

Dated: May 7, 2019

By: */s/ Brandon M. Wise*
Brandon M. Wise – IL Bar # 6319580
Paul A. Lesko – IL Bar # 6288806
PEIFFER WOLF CARR & KANE, APLC
818 Lafayette Ave., Floor 2
St. Louis, MO 63104

Ph: 314-833-4825
Email: bwise@pwcklegal.com
Email: plesko@pwcklegal.com
Cook County Atty # 62258

COUNSEL FOR THE PLAINTIFFS AND THE PUTATIVE CLASS